[L. A. No. 11808. In Bank.—February 25, 1931.]

SOUTHLANDS COMPANY (a Corporation) et al., Appellants, v. CITY OF SAN DIEGO (a Municipal Corporation) et al., Respondents.

648

H. C. Gardiner for Appellants.

M. W. Conkling, City Attorney, and Charles C. Crouch, Hugh A. Sanders and Ray M. Harris for Respondents.

Gibson, Dunn & Crutcher, S. M. Haskins and Edward E. Bacon, *Amici Curiae.*

THE COURT.—This is a proceeding brought by certain property owners within an assessment district to enjoin certain work authorized by the common council of the City of San Diego, purporting to act under the terms and provisions of the Acquisition and Improvement Act of 1925 (Stats. 1925, p. 849). It appears that the proposed improvement consists in part in the erection and building of a bridge and causeway across Mission Bay, a navigable body of water lying within the county of San Diego, belonging to the state of California, and over which the United States has retained sufficient jurisdiction to enable it to control navigation and commerce thereon. It further appears that the City of San Diego proceeded under the provisions of said act to create the necessary improvement and assessment district, heard protests of certain property owners whose properties were included therein, including the protest of

appellants; and, after a hearing, overruled all such protests, and awarded the contract of construction to one of the defendants, Noble & Rhodes, Inc., who started and practically completed the work thereon.

Appellants sought in the trial court to have all of the proceedings taken by the common council declared null and void; to have all of the defendants enjoined from carrying on the work; to enjoin the City of San Diego from ordering or directing the issuance of any bonds; and to enjoin the further trial of certain condemnation actions brought by the city in an attempt to carry out the improvement.

After the filing of the complaint, the defendants, respondents herein, generally and specially demurred. The trial court sustained a demurrer without leave to amend to part of the complaint and permitted amendments to other parts of the complaint. The plaintiffs thereupon filed certain amendments to the complaint, the defendants answered and the case was tried on its merits. After hearing the evidence and various arguments of counsel, the trial court dismissed the plaintiffs' complaint and entered judgment for the defendants. From the judgment so secured the plaintiffs prosecute this appeal on a bill of exceptions.

So far as pertinent here, the trial court found that Mission Bay is a navigable body of water several square miles in area, located in San Diego County, belonging to the state of California, and over which the United States has jurisdiction to control navigation and commerce; that the common council of the City of San Diego had duly and regularly proceeded under the provisions of said Acquisition and Improvement Act to create the assessment district and had properly proceeded to take all necessary steps to carry out the improvement; that it is not true that the bridges and causeway to be erected as part of the improvement are not part of any street; that it is not true that the same are not the extension of a public highway; that it is true that no means of travel other than by water has ever existed along the line of the bridges and causeway; that it is true that according to the estimate of the engineer of work, at least five-sevenths of the total cost of the entire improvement will be expended in the erection and construction of the bridges and causeway; that the total cost of said improvement will be approximately $725,000; that defend-

ants have the "right, power, and authority to build said causeway and bridges over said Mission bay, and that the said bridges and causeway will, when constructed, constitute a part or an extension of, a public street and highway"; that Mission Bay is not within the boundaries of the City of San Diego; that the consent of the county of San Diego has not been secured to the erection and construction of the improvement over county property; that only property within the City of San Diego is to be assessed for the improvement; that the said causeway and bridges "are necessary and proper to complete, connect with, and render of greater use to the public existing improvement in and on public ways . . . and that the consent, easement, and rights of way of the state of California, and of the United States government have been obtained for the construction of said improvements"; that the plans and specifications require that as part of said improvement a causeway 950 feet long on one side of the bay and 2300 feet on the other, and two bridges 950 feet and 750 feet long, respectively, be erected; that the assessment district is divided into twelve zones; that zones nine and ten are on the south side of Mission Bay; that the waters of Mission Bay lie between these two zones and the ten zones on the north side of the bay; that the waters of the bay are included within the exterior boundaries of the district; that no part of the waters of the bay, or the lands underlying the same, have been or could be assessed for the improvement; and that the entire improvement is to be constructed within the boundaries of the assessment district.

On this appeal appellants contend that the entire proceedings are null and void, and that if the work be continued and the assessment levied, appellants will be deprived of their property without due process of law. Appellants' objections in this regard can be conveniently grouped under four main heads:

1. That neither said act nor any other statute confers on cities the power to construct bridges and causeways over navigable waters of the state; that under the federal law the consent of the state must be secured to the construction of such bridges and causeways; that such consent has not been granted; that if said act does authorize the construction of bridges over navigable waters, it is unconstitutional for

the reason that it then embraces more than one subject not expressed in its title.

2. That the major portion of the improvement is outside the assessment district; that the district is not continuous nor contiguous; that even if said act does authorize the construction of bridges, it does not authorize the construction of an improvement partially in the municipality and partially in unincorporated territory; that the county of San Diego has never consented to the improvement crossing unincorporated territory.

3. That within the assessment district are included municipally owned lands not devoted to a public purpose; that the liability of the city for such assessments constitutes an indebtedness in excess of the constitutional and charter provisions of the City of San Diego.

4. That one Paul R. Watson has been appointed "Engineer of Work"; and "Superintendent of Work"; that the position of "Superintendent of Work" is a public office; that the employment of the same person in both positions constitutes a violation of certain provisions of the city charter.

The trial court specifically found that the first three objections set forth above were not made before the city council in the formal protest filed by appellants. As to whether the fourth objection was or was not made does not directly appear; that point having been determined on demurrer; and the bill of exceptions containing no reference thereto. It must be assumed, therefore, that the objection was not made, all presumptions being in favor of the trial court's judgment. These objections will be considered in order.

The most important question presented on this appeal is whether the Acquisition and Improvement Act of 1925, or any other statute, confers authority upon municipalities to build bridges over navigable intrastate water, when such a bridge becomes reasonably necessary in the construction and improvement of a highway. ▉ Inasmuch as the United States possesses jurisdiction over such waters for the purpose of controlling navigation and commerce, it is obvious that the consent of the United States authorities must be secured for the construction of such a bridge. ▉ In this regard, an act of Congress of March 3, 1899,

provides in part (U. S. Code, Ann., title 33, sec. 401, p. 377):

"It shall not be lawful to construct or commence the construction of any bridge, dam, dyke, or causeway over or in any port, roadstead, haven, harbor, canal, navigable river, or other navigable waters of the United States until the consent of congress to the building of such structure shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of War, provided, that such structures may be built under authority of the legislature of the state across rivers and other waterways the navigable portions of which lie wholly within the limits of a single state, provided the location and plans thereof are submitted to and approved by the Chief of Engineers and by the Secretary of War before construction is commenced. . . . "

It is likewise provided that any person or corporation violating the above section shall be deemed guilty of a misdemeanor. (U. S. Code, Ann., title 33, sec. 406, p. 425.)

Under the above statutory provision, it is clear that the source of the authority to build a bridge over intrastate navigable waters is the state, and not the United States. In other words, no approval other than that of the Secretary of War and Chief of Engineers to the location and plans of the bridge need be secured from the United States. Such approval was admittedly secured in the present case. However, it is obvious under the terms of the above statute that such approval of the United States authorities confers no right on the applicant in the absence of the consent of the state. The approval of the Secretary of War and the Chief of Engineers is necessarily predicated on the assumption that the consent of the state has or will be given. This is just another way of stating that the source of authority to build such a bridge lies in the state and not in the United States. (See *International Bridge Co.* v. *New York*, 254 U. S. 126, 132 [65 L. Ed. 176, 41 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes Supp.].)

Therefore, since the consent of the properly authorized United States authorities has been secured to build the bridges and causeway involved herein, the only question to be determined on this appeal in this regard is whether the state legislature has authorized and consented to the

construction of such bridges and causeway. ██ There can be no question but that the state legislature by a general statute may delegate to any agency such as a municipality the power to consent to and order the construction of such a bridge. (*Wright* v. *Nagle*, 101 U. S. 791 [25 L. Ed. 921, see, also, Rose's U. S. Notes].) Respondents contend that our statute has conferred upon municipalities the right and power to construct bridges over navigable intrastate waters when such bridges are an integral part of a highway improvement. Appellants contend that neither that statute nor any other statute has conferred such a power on municipalities.

At the outset of this discussion, respondents point out that the proceedings involved herein were taken under the provisions of the Acquisition and Improvement Act, and also point out that the objection that the state has not consented to the construction of such a bridge was not made before the common council of the City of San Diego as one of the grounds of the protest of such improvement. Respondents contend that under the curative provisions of that act, appellants are precluded from now objecting to the proceedings on this or any other ground not specified as a ground of objection before the common council. ██ The curative provision most strongly relied on is found in section 16 of the act which provides in part:

"All objections to any acts or proceedings relating to the improvement prior to the time within which such objections are permitted by this section to be filed, not made in writing and in the manner and at the time aforesaid, shall be waived. It is the intent of this section that any person failing to file such notice within the time specified shall be deemed to have intentionally waived every objection to the regularity or validity of such acts or proceedings and he shall be estopped from thereafter raising the same."

In addition, section 10 of the act provides in part:

"The findings and determination of said legislative body upon the matters of the extent and boundaries of the assessment district, the zones, if any, into which said district is divided, the percentage of the expenses to be raised from each of said zones, the grades to which the improvement is to be constructed, and the necessity for the acquisition or

improvement, or both, comprehended by the proceeding, shall be final and conclusive."

And section 52 provides in part:

"No error, defect, irregularity, informality, and no neglect or omission of any officer of any county or municipality, in any procedure taken hereunder, which does not affect the jurisdiction of the legislative body to order the doing of the thing or things proposed to be done, shall avoid or invalidate such proceeding or any bonds issued thereunder. The exclusive remedy of any person affected or aggrieved thereby shall be by appeal to the legislative body as hereinbefore provided."

Curative and conclusive evidence provisions similar to those quoted above, found in other street improvement and bond acts have been the fertile source of litigation. It is now well settled, if such provisions are found in the statute, that, if a property owner fails to file a protest with the municipal legislative body, or protests on certain designated grounds and such protest has been denied, he cannot later, in a proceeding in court or elsewhere, complain of the denial of his protest on grounds other than those stated in his protest, nor can he on any grounds not stated in any protest maintain an action to restrain any improvement authorized by the municipal legislative body. In other words, objections to proceedings for public improvements are waived if not seasonably and properly urged before the local legislative body. (See for several recent cases discussing the rule, *Blake* v. *City of Eureka*, 201 Cal. 643 [258 Pac. 945]; *Noyes* v. *De Golyer*, 202 Cal. 542 [261 Pac. 1006].) ▆ It is equally well settled, however, that objections addressed to the proceeding, constituting, or necessary to constitute, a compliance with the "due process" clause of the state and federal constitutions are not waived by failure to urge the same before the legislative branch of the municipality wherein the improvement proceedings were had. (*Chase* v. *Trout*, 146 Cal. 350 [80 Pac. 81]; *Watkinson* v. *Vaughn*, 182 Cal. 55 [186 Pac. 753]; *Noyes* v. *De Golyer, supra.*) The difficulty comes in such cases in determining just what constitutes a defect going to "due process", or what has been termed in some cases as a "jurisdictional defect". The leading case discussing what defects are and what defects are not waived by failure to

object is *Chase* v. *Trout*, 146 Cal. 350 [80 Pac. 81], in interpreting similar provisions found in the Vrooman Act. (Stats. 1885, p. 147.) In that case, the court, after discussing what defects are waived, stated at page 360:

"What, then, are the essentials the non-observance of which cannot be cured? The property must be within the jurisdiction of the local board; there must be the actual performance of some work which is to be paid for, that is, a 'subject matter' of which the council can acquire jurisdiction; an assessment or apportionment of the amount to be raised must be made; and, as above stated, there must be sufficient notice and opportunity for the hearing and determination of grievances and objections to constitute due process of law."

Section 52 of the Mattoon Act, itself, quoted *supra*, recognizes the distinction, wherein it is provided that "no error . . . in any procedure taken hereunder, *which does not affect the jurisdiction of the legislative body* . . . shall avoid . . . such proceeding. . . . " (See, also, *Chapman* v. *Jocelyn*, 182 Cal. 294, 300 [187 Pac. 962]; *Ramish* v. *Hartwell*, 126 Cal. 443 [58 Pac. 920]; *People* v. *Van Nuys Lighting Dist.*, 173 Cal. 792, 797 [Ann. Cas. 1918D, 255, 162 Pac. 97].)

It seems clear, under the above decisions, that the main purpose of requiring all objections to be specified before the municipal legislative body is not, primarily, to lay the foundation of a future suit, but to give opportunity to the local legislative body to correct any errors, defects, or irregularities in the proceedings. Obviously, if the defect is of such a nature that the legislative body before whom the objections have been filed has no power to correct it, the making of an objection would not fulfil the above purpose. One test of whether the defect is waived by failure to object, suggested by the above decisions is whether the legislative body has power in the proceeding before it to correct the defect alleged to exist. Another test is whether or not the particular step alleged to be faulty, irregular or defective, could have been omitted altogether by the legislature of the state in prescribing the procedure to be followed in creating the district and levying the assessment.

We have no hesitancy in holding that if the defect now urged by appellants does exist—that is, if the state has

not consented to the construction of bridges by municipalities over intrastate navigable waters, when such a bridge is reasonably necessary in the construction of a highway—then that defect is jurisdictional in the sense that it is not waived by failure to object on that ground before the local legislative body. Under either of the tests suggested above, the defect is not waived by failure to object.

█ Moreover, erection of the bridge without state consent would constitute a direct evasion of the federal statute above quoted, violation of which is made a crime. Under elementary principles, any contract entered into by the city in violation of such a penal statute renders the contract void. (See *Berka* v. *Woodward*, 125 Cal. 119, 126 [73 Am. St. Rep. 31, 45 L. R. A. 420, 57 Pac. 777]; *Stockton Plumbing & Supply Co.* v. *Wheeler*, 68 Cal. App. 592, 601 [229 Pac. 1020].)

We now turn to a discussion of whether or not the state has conferred upon municipalities the authority to build bridges over navigable intrastate waters. Appellants contend that the act in question limits the authority of a municipality to the construction and improvement of highways in the sense of roadways, and strenuously contend that the construction and erection of a bridge over navigable waters does not constitute the improvement of a highway within the meaning of the act.

The act specifically authorizes the construction of bridges, at least under certain circumstances. Section 50 provides in part:

"The word 'improve', and any of its variants, as used in this act, shall be deemed to mean and shall include the construction or doing of the things and work following, either singly or in any combination thereof, as well as the reconstruction and repairing thereof; the construction or reconstruction of sidewalks, crosswalks, steps, parks and parkways, culverts, *bridges,* curbs, gutters, tunnels, subways or viaducts; *all other work* which may be deemed necessary to improve the whole or any portion of *any public ways* or property or rights of way of the public; *all other work* or improvements *auxiliary, incidental, necessary or convenient to any of the above,* which may be required to carry out, facilitate or complete the same."

Appellants admit that there can be no question but that the above section authorizes a municipality to construct a bridge merely *incidental* to the construction or improvement of a highway, but contend that the bridge herein involved is not merely incidental to the construction or improvement of a highway, emphasizing in this regard that the trial court found that five-sevenths of the total cost of the improvement is to be expended on the bridges and causeway, and also emphasizing the fact that the bridges and causeway are to cross navigable waters. It was specifically held by this court in the case of *Bailey* v. *City of Hermosa Beach,* 183 Cal. 757, 761 [192 Pac. 712], under the provisions of the Vrooman Act similar to the above, that "the act . . . authorizes the construction of bridges in the street of a city, without any limitations other than the general implied one that the bridges be for street purposes". Appellants contend, however, that the word "bridges" as above used is to be strictly limited to "incidental bridges" in the nature of viaducts, etc., and is not to be extended to include bridges over navigable waters. ■ From a reading of the entire act, we are of the opinion that, even if the word "bridges" was not contained in section 50 of the act, the general power to improve and construct highways, would include the power to construct bridges and causeways whenever in the opinion of the local legislative body, and in the absence of fraud, a bridge and causeway becomes reasonably necessary in the construction and improvement of a highway, and this without regard to whether the bridge crosses navigable or non-navigable waters. ■ In this connection, the trial court found that:

" . . . said bridges and causeway will, when constructed, constitute a part of, and an extension of, a public street and highway, to-wit: Ingraham street from Crown Point across the waters of Mission Bay to connect with a proposed street, as established in these proceedings, denominated Ingraham street, ending with Point Loma Boulevard, and leading to said water from the main portion of the city of San Diego."

And the court further found:

" . . . that the said causeway and bridges are necessary and proper to complete, connect with, and render of greater

use to the public existing improvements in and on public ways within said municipality."

The evidence upon which this finding is based is not before us on this appeal, and must, therefore, be presumed to be amply supported by the record.

The resolution of intention of the common council of the City of San Diego provided in part, "That the public interest, convenience, and necessity require . . . that a public right of way for street purposes be acquired . . . and it is hereby determined that said right of way, through, over and upon the said lands is necessary to be taken and acquired for the said purpose. . . . "

It appears to us clear that under the general power to construct and improve highways conferred upon municipalities by the provisions of the statute a municipality has the power to construct a bridge over navigable or non-navigable waters, whenever in the opinion of the local legislative body it becomes reasonably necessary in such construction or improvement to construct such a bridge, and, in the absence of fraud, the finding of that body that such a bridge is necessary, is conclusive and not subject to review. We do not see how the mere fact that five-sevenths of the cost of the improvement is to be expended on the construction of the bridge, determines that, as a matter of fact, such bridge is not incidental to, or reasonably connected with, the construction and improvement of a highway.

Where the bridge is to cross navigable waters suitable protection must be given to the right of those engaged in navigation and commerce. In the case at bar, not only has the approval of the Secretary of War and Chief of Engineers been secured, but also the Director of Public Works and State Engineer of California have approved the "width of the spans necessary to permit the free flow of water". Thus the rights of those engaged in navigation and commerce have been protected.

We have been unable to discover any prior decision of this court, holding that the power to construct highways includes the power where reasonably necessary, to construct bridges over navigable waters, the question apparently never having been presented. Other states, however, have held that such power exists. One of the early and leading cases on the subject, where the problem is fully discussed, is

*Brown* v. *Town of Preston,* 38 Conn. 219. In that case, at page 223, the court stated:

"The statute in general terms confers on the superior court the power to lay out highways in certain cases, and prescribes the manner in which it shall be done. (Stats., p. 498, sec. 29.) The statute, however, is silent in respect to bridges. That the power to lay out a highway carries with it the power to require the construction of bridges in the line of the highway, over all streams and rivers not navigable, cannot be denied. It must also be conceded that inlets and rivers navigable to some extent are within the limits of this power. That such has been the practical construction of the statute the records of our courts and reported cases will abundantly show. (*Wethersfield and Glastonburg* v. *Humphrey,* 20 Conn. 218; *Clark* v. *Saybrook,* 21 Conn. 313; *Ledyard* v. *Hurlburt,* 22 Conn. 178.)

"But we are urged to limit this power to those cases in which the navigation is so inconsiderable as not to require the construction of a drawbridge. We have not discovered any good reason for such a limitation. It would prove detrimental to the interests of the public along our navigable rivers and seacoast, by checking improvements in the matter of highways, while, on the other hand, the advantages sought to be secured thereby are unimportant and inconsiderable. . . .

" . . . it is apparent that if the bridge is constructed with a suitable draw, the injury to navigation will be very slight. Whatever the inconvenience may be, it was doubtless fully considered by the committee in determining the common convenience and necessity of the proposed highway. It was proper that it should be so considered. Upon such consideration it is found that the public wants require the construction of the highway, including the bridge. The slight inconvenience to which those interested in the navigation of this cove will be subject, should be endured for the sake of the greater good accruing to the public at large.

"The most serious objection to construing this statute as conferring the powers contended for, is found in the fact that the statute makes no provision for the construction of a drawbridge. Although the statute contains no express authority, yet we think it may be clearly implied in cases where public convenience and necessity demand a highway

across a navigable stream of water. Towns in the construction of highways exercise the right of eminent domain, which right is delegated to them by the legislature. The obstruction of navigation by means of a drawbridge is an exercise of this same right. The power implied therefore is of the same general nature, and is necessary in order to secure fully the main object contemplated by the statute.''

The above case was affirmed in the case of *Bryan* v. *Town of Branford,* 50 Conn. 246, 250. See, also, *Aransas County* v. *Coleman-Fulton Pasture Co.,* 108 Tex. 216 [191 S. W. 553], where many of the decisions on the subject are reviewed.

We are therefore of the opinion that the general power to construct highways conferred on municipalities by the statute includes by necessary implication the power and authority to construct a bridge over navigable waters whenever the construction of such a bridge becomes reasonably necessary in the construction of a highway, and is an integral part thereof. We think this interpretation of the act is in accord with the intent of the legislature as indicated by section 52 of the act, which provides in part: ''This act and all of its provisions shall be liberally construed to the end that the purposes hereof may be effected.''

We are not presented with the question and, therefore, we do not determine whether an assessment district could be created solely for the purpose of constructing a bridge not connected with a highway improvement. That is not the situation presented herein, as shown by the findings above quoted. ▮ Even if the statute did not impliedly authorize municipalities to build bridges over navigable waters, when reasonably necessary in the construction and improvement of a highway, direct statutory authority exists for the construction of such a bridge. By a statute of 1883 (Stats. 1883, p. 295) it is provided in part:

''It shall be lawful for municipal corporations, and they are hereby authorized by their respective legislative body or bodies, to erect and maintain *drawbridges across navigable streams* that flow through or penetrate the boundaries of such city, when the necessities require it. Such bridges shall in all respects be constructed in accordance with the provisions of section two thousand eight hundred seventy-five of the Political Code.''

It is, of course, true that the above statute uses the expression "navigable streams", but we have no hesitancy in holding that "streams", as therein used, comprehend such a body of water as Mission Bay. There is nothing to indicate that "streams", as therein used, was not used in its most comprehensive sense, including all bodies of water. This interpretation is indicated by the fact that the above statute directly refers to section 2875 of the Political Code. That section provides:

"All bridges constructed under this chapter *crossing navigable streams* must be so constructed as not to obstruct navigation, and must have a draw or swing of sufficient space or stand to permit the safe, convenient, and expeditious passage at all times of any steamer, vessel, or raft which may navigate *the stream or water* bridged."

It is to be noted that in the last part of the Political Code section above quoted the expression used is "stream or water", which expression was obviously and clearly intended as the equivalent of the expression "navigable streams", as used in the first part of the section. ▪ Moreover, the headnote of section 2875 of the Political Code, as it appears in the code commissioner's edition, reads: "How constructed over navigable waters." Such headnote may be considered part of the code itself, for purposes of interpretation. (23 Cal. Jur. 772, sec. 147.)

Appellant has cited three cases from other states (*Murdock* v. *Stickney*, 8 Cush. (Mass.) 113; *Jones* v. *State*, 114 Ga. 538 [40 S. E. 807]; *School Trustees* v. *Schroll*, 120 Ill. 509 [60 Am. Rep. 575, 12 N. E. 243]), all of which hold that the expression "streams", as used in certain statutes involved therein, must be limited to bodies of water having a definite and continuous current. Respondents and *amici curiae* have referred us to two cases (*Munson* v. *Hungerford*, 6 Barb. (N. Y.) 265, and *Long* v. *Boone County*, 36 Iowa, 60), holding that the word "streams", as used in certain statutes there under consideration was used in its most comprehensive sense to include all bodies of water. Either interpretation of the word as used in the statute of 1883 is therefore permissible, and from the analysis already given, we are of the opinion that the term was therein used in its most comprehensive sense, including within its scope waters such as those herein involved.

In this state lands underlying navigable waters and tide lands belong to the state, and before a bridge can be constructed over such lands an easement must be secured from the state. Having already held that a bridge is included within the power to construct highways, there can be no doubt that such an easement has been granted in the present case. By an act of April 2, 1866 (Stats. 1865–66, p. 855), an easement for such highways has been granted in the most comprehensive terms. The title to that act reads: "An act granting to roads and highways a right of way over the public lands of the state."

We conclude this part of the discussion with the observation that the City of San Diego and other municipal corporations have both express and implied power and authority to construct bridges and causeways over the navigable intrastate waters of the state, whenever such bridge or causeway becomes reasonably necessary in the construction of a highway improvement, provided the approval of the proper state and federal authorities be first secured to insure that the proposed structure will not unduly interfere with navigation and commerce.

Appellants next contend that if the Acquisition and Improvement Act does authorize the construction of bridges over navigable waters, then it is unconstitutional, being in violation of article IV, section 24, of the California Constitution, providing that every act shall embrace but one subject, which shall be expressed in its title. It is true that the title of the act does not contain the terms "bridges" or "causeways", but the title does contain a comprehensive description of the nature of the act in reference to the "acquisition of, including the laying out, opening, extending, widening, straightening, and acquiring in any manner, in whole or in part, and for the improvement of a work upon public highways, roads, streets, avenues, boulevards, lanes, alleys, courts, places, parks, pleasure grounds, commons, and all public ways and other property and rights of way of the public". It is clear, inasmuch as we have already held that the word "highways" impliedly includes "bridges", that in no sense can the title of the act be said to be misleading. It must be noted that the title of an act need not embrace an entire catalogue or abstract of its contents. All that is required is that the subject must be indi-

cated by the title of the act, or be logically germane to it, and included within its scope. (See *Parks* v. *Pacific Fire Extinguisher Co.*, 37 Cal. App. 112 [173 Pac. 615]; *Buelke* v. *Levenstadt*, 190 Cal. 684 [214 Pac. 871]; *McClure* v. *Riley*, 198 Cal. 23 [243 Pac. 429]; 23 Cal. Jur., p. 646 et seq.) The point is without merit.

The next contentions of appellants are built around the findings of the trial court that Mission Bay, over which the bridges and causeway are to be constructed, is not within the boundaries of the City of San Diego, but is within the unincorporated territory of the county of San Diego. Other than the bridges and causeway, however, the improvement is within the City of San Diego, the termini of the improvement being so located, and being bisected by the bridges and causeways. Appellants contend that even if the statute confers power and authority upon municipalities to build the bridges and causeways here provided for, the act specifically limits the jurisdiction of municipal corporations so as to exclude power and authority to construct the improve ment over unincorporated territory under the circumstances here existing. This contention is based on a literal reading of section 2 of the act which provides in part: "Likewise, the jurisdiction of the legislative body of a municipality shall be extended over and it shall have said power and authority to acquire and improve public ways within the boundaries of such municipality, and also those forming its exterior boundaries where it joins unincorporated territory of the county or the territory of another municipality, *and also public ways and public property lying within unincorporated territory of a county and of one or more other municipalities . . . provided,* that the consent of the legislative body or bodies of the county and of such other municipality or municipalities within the boundaries of which such public ways and property lie, expressed by reso- lution, which shall first be obtained thereto and to the assessment of the property therein, . . . "

It will be noted that the above section provides expressly for three classes of improvements over which a municipality has jurisdiction, viz.: 1. Improvements entirely within the boundaries of the municipality; 2. Improvements forming the exterior boundaries of the municipality, where it joins unincorporated territory of the county or of another munici-

pality. (It should be here noted that the trial court expressly found that the proposed improvement did not fall within either of these two classes.) 3. Improvements lying partly within the municipality and partly "lying within unincorporated territory of a county *and* one or more *other* municipalities".

Appellants construe the last-quoted provision of the statute to mean that when a municipality desires to construct an improvement partially within its boundaries and partially across unincorporated territory, the municipality has jurisdiction over the entire improvement only when the proposed improvement has one terminus in the municipality instituting the proceeding and the other terminus in another municipality,. but so to join the two municipalities, the improvement must cross unincorporated territory. Such a situation is undoubtedly provided for by the section, the act providing that the municipality first instituting proceedings shall have jurisdiction over the entire improvement, providing the consent of the county and the other municipality be first secured to the improvement and to the assessment. Appellants point out that the improvement here involved does not run between two *different* municipalities, but between two parts of the same municipality; that, to do so, it must cross unincorporated territory; and that admittedly the consent of the county of San Diego was not secured so to do. If the act does not confer jurisdiction on a municipality to construct such an improvement, we are of the opinion that clearly this point was not waived by failure to protest on that ground before the common council, under the authorities above cited, the alleged defect being jurisdictional in the sense that it goes to due process.

The question as to whether a municipality has jurisdiction over an improvement partially within its boundaries and partially lying within and across unincorporated territory seems never to have been raised. in this state. It was not noticed in the initial case upholding the act, for in that case, *Los Angeles* v. *Hunt*, 198 Cal. 753 [247. Pac. 897], at page 756, it was said: "An examination of the aforesaid act of 1925 discloses that the controlling purpose of those who framed it and of the legislature in its adoption was to provide a simplified plan and at the same time a comprehensive procedure for the acquisition and improvement of public

ways, parks, and pleasure grounds, whether lying entirely within unincorporated territory of a county or within the territory of a municipality, *or lying partly within such unincorporated territory and partly within one or more municipalities;* or lying within two or more municipalities; or forming the exterior boundary of any municipality where the same joins unincorporated territory of a county or the territory of another municipality whether partly within or without such boundary.''

The title of the act contains language almost identical with that quoted from the Hunt case. Evidently in framing the body of the act the legislature did not expressly provide for the situation involved where the improvement is partially in the municipality and partially in unincorporated territory. This point we do not deem it necessary to decide, the issue not being involved on this appeal. ■■■ It is clear that the legislature has provided for jurisdiction in the municipality when the termini of the improvement are in different munici-palities, and the improvement crosses unincorporated terri-tory. In the absence of an expressed or implied limitation to the contrary, this grant of jurisdiction, by necessary inference, must be interpreted to include jurisdiction over all similar improvements of a lesser degree, which would include an improvement where the termini of the improve-ment are in the same municipality and the improvement crosses unincorporated territory. This interpretation we think is justified under section 52 of the act, *supra*, which provides in part that ''this act and all of its provisions shall be liber-ally construed to the end that the purposes hereof may be effective''.

■■■ The unincorporated territory herein included, con-sists entirely of the lands and waters of Mission Bay. This territory is included within the exterior boundaries of the assessment district, but the lands therein included, it is admitted, and the trial court found, are not subjected to any assessment. Appellants' contentions that the district is neither contiguous nor continuous because bisected by this unincorporated nonassessable land are obviously erroneous. It is too well settled to require citation of authority that nonassessable land may be included within an assessment district, without affecting the validity of the district.

■ Moreover, the trial court expressly found that "it is not true that the lands contained in such district are not contiguous". This finding has not been attacked by the appellants, and the evidence to support the same has not been included in the bill of exceptions and cannot, therefore, be considered by this court. ■ Furthermore, this point was waived by failure to object on that ground before the common council, it not being jurisdictional. (*Teeter* v. *Los Angeles*, 209 Cal. 685 [290 Pac. 11].)

■ It is admitted that the consent of the board of supervisors of the county of San Diego has never been secured to cross the unincorporated territory of the county, and for that reason the appellants contend that the proceedings are void. Such consent is provided for in section 2 of the act above quoted. But we are not here dealing with a situation where county land is included in an assessment district, and subjected to assessment. The entire land included within the district and crossed by the improvement is free from assessment, being lands owned by the sovereign. Under such circumstances, the consent of the county for permission to cross Mission Bay would be merely a formal consent, and we are of the opinion that such defect does not go to due process, and was, therefore, waived by failure to object on tnat ground before the common council. It should be noted that the county has at no time objected to the improvement on this or any other ground.

■ Appellants next object to the improvement on the ground that the City of San Diego owns a large acreage within the assessment district, consisting of pueblo lands not used in the performance of a public function, and which lands are subjected to the assessment. It is contended that such liability creates an indebtedness of the city in violation of the debt limitations found in the Constitution and city charter. The conclusive answer to this contention is found in the fact that the lands of the city so subject to assessment are admittedly not lands used in the performance of a public function. The lands themselves, therefore, are the primary debtor and not the city. In the case of *Pasadena* v. *McAllaster,* 204 Cal. 267 [267 Pac. 873], chiefly relied on by the appellants, the lands involved were public lands used in the performance of a public function, and, therefore, the lands themselves could not be sold to satisfy the

assessment, the city, under the terms of the act, being personally liable for the assessment. Here, however, the lands are not being used in the performance of a public function, and they may, therefore, be sold to satisfy the assessment. Under such circumstances, the liability is primarily that of the lands and not of the city, and obviously, the debt limitations of the state Constitution and the city charter are not applicable.

█ The last objection to the proceeding, of which some mention should be made, is that the same person was employed as engineer of work and as superintendent of work. It is contended that this violates a charter provision prohibiting any officer or employee of the city from being directly or indirectly interested in the performance of any work, contract or business with or for the city. It appears that one Paul R. Watson has been appointed superintendent of the work for the city, with no compensation, and that the same person is likewise engineer of work, his compensation for this service to be three per cent of the contract price. The trial court sustained a demurrer without leave to amend to this allegation of the complaint, and was undoubtedly correct in so doing. Primarily, it was correct, because we are of the opinion that Watson, as superintendent of work for this one improvement, was not an "officer or employee" of the city, as used in the charter provision under discussion. Under similar provisions, it has uniformly been held that the terms "officers and employees", as so used, imply that the person render regular and continuous services; that the services are not limited to a particular transaction; that the person has a fixed tenure or position; that the person is liable to account for misfeasance or nonfeasance; and that he receive compensation. It is true that all of these elements need not concur, but in reference to Watson not one of them is present. Under such circumstances he cannot be held to be an officer or employee within the prohibition found in the charter. (See *Louisville R. R. Co.* v. *Wilson,* 138 U. S. 501, 505 [34 L. Ed. 1023, 11 Sup. Ct. Rep. 405, see, also, Rose's U. S. Notes]; *Coulter* v. *Pool,* 187 Cal. 181 [201 Pac. 120]; *Kennedy* v. *City of Gustine,* 199 Cal. 251 [248 Pac. 910]; *Reid* v. *Boyle,* 43 Cal. App. 34 [184 Pac. 423].)

 ,In the second place, the trial court was undoubtedly correct in sustaining the demurrer without leave to amend to this allegation of the complaint, because it does not appear that this objection was made before the common council, and, therefore, under section 16 of the act and the authorities already cited, it must be conclusively deemed to have been waived.

For the foregoing reasons, the judgment appealed from should be and it is hereby affirmed.