[S. F. No. 13508. In Bank.—November 2, 1931.]

JOHN A. HANNON et al., Respondents, v. J. H. MADDEN et al., as Trustees, etc., et al., Appellants.

H. C. Symonds and Kirkbride, Wilson & Brook for Appellants.

L. C. Pistolesi and Franklin B. Worley for Respondents.

THE COURT.—Plaintiffs, forty-five residents and taxpayers of the town of Sausalito, who own real property situate within the street assessment district C, as established by the board of trustees of said town, brought this action to establish the invalidity of an assessment in the sum of $181,304.54 levied against approximately 650 parcels of real property comprising said district C, to pay the cost of street improvements done under the Street Improvement Act of 1911 [Stats. 1911, p. 730] and amendments thereto. From a judgment for plaintiffs and an order denying their motion for a new trial, defendants, consisting of the five members of the board of trustees, the town clerk and the contractor who did the work of street improvement, prosecute this appeal.

As grounds for invalidating the assessment the plaintiffs alleged in a second amended complaint that the board of trustees in overruling the protests of plaintiffs and confirming the assessment by a four to one vote disregarded the rights of plaintiffs and acted fraudulently, unlawfully and arbitrarily, knowing that the work of street improvement was not performed according to the plans and specifications in material particulars, which will be discussed hereafter. The court made a finding in the language of this allegation except that it omitted the word "fraudulently". The findings no place expressly find that defendants acted fraudulently. The terms used are wrongfully, unlawfully, illegally, arbitrarily and knowingly coupled together in various forms. The one member of the board of trustees who did not vote

with the other members to confirm the assessment is the brother of one of the plaintiffs. The plaintiffs also alleged that the assessment and proceedings leading up to it were irregular and defective in other respects. The court below made findings favorable to plaintiffs on most of said additional allegations. The sufficiency of the evidence to support said findings, and the further question as to whether the irregularities invalidate the assessment will be considered in subsequent discussion.

The Street Improvement Act of 1911, in common with other public improvement acts, provides for an appeal to the governing board of the city, the decision of which body is declared to be final and conclusive as to all errors, informalities and irregularities which the council might have avoided or remedied during the progress of the proceedings or which it can remedy at the time of hearing of the protests. A curative provision is also found in the 1911 act, as in other acts, the effect of which is to validate the proceedings and cure all irregularities and informalities except those violative of requirements which are jurisdictional in the sense that a failure to follow them constitutes a taking of property without due process of law. (*Southlands Co.* v. *San Diego*, 211 Cal. 646 [297 Pac. 521]; *Noyes* v. *Chambers*, 202 Cal. 542 [261 Pac. 1006]; *Chase* v. *Trout*, 146 Cal. 350 [80 Pac. 81].) The pertinent provisions of the 1911 act, as amended at the time the proceedings herein were taken, are as follows: ''All the decisions and determinations of said city council, upon notice and hearing as aforesaid, shall be final and conclusive upon all persons entitled to appeal under the provisions of this section, as to all errors, informalities and irregularities which said city council might have avoided, or have remedied, during the progress of the proceedings, or which it can at that time remedy. No assessment, warrant or diagram, and no proceedings prior to the assessment, shall be held invalid by any court for any error, informality or other defect in the same, where the resolution of intention of the council to do the work has been actually published as herein provided.'' (Stats. 1923, p. 114, amending sec. 21.)

It has been held repeatedly in this and other jurisdictions, in interpreting such statutes, that where no protests are made to the council, such nonjurisdictional matters as the failure of the work to comply with the contract can-

not be urged in a court action as grounds for invalidating the assessment. (*Southlands Co.* v. *San Diego, supra; Blake* v. *City of Eureka,* 201 Cal. 643 [258 Pac. 945]; *McLaughlin* v. *Knobloch,* 161 Cal. 676 [120 Pac. 27]; *Warren* v. *Riddell,* 106 Cal. 352 [39 Pac. 781]; *Fanning* v. *Leviston,* 93 Cal. 186 [28 Pac. 943].) ■ Where an appeal has been taken to the council, its decision may be attacked in a legal proceeding only upon pleading and proof that the board acted fraudulently or that its action is so palpably unreasonable and arbitrary as to raise an inference of plain abuse of discretion as a matter of law. (*Cutting* v. *Vaughn,* 182 Cal. 151 [187 Pac. 19]; *Spring Street Co.* v. *City of Los Angeles,* 170 Cal. 24 [L. R. A. 1918E, 197, 148 Pac. 217]; *Lambert* v. *Bates,* 137 Cal. 676 [70 Pac. 777]; *Hutchinson* v. *Coughlin,* 42 Cal. App. 664 [184 Pac. 435].) The allegation in the instant case is that the board of trustees fraudulently, unlawfully and arbitrarily overruled the protests of plaintiffs, knowing that the work was not performed according to the plans and specifications. It is also alleged that the superintendent of streets accepted the work knowing that it did not conform to the contract. In their protests filed with the board of trustees, the particulars wherein the work did not meet the requirements of the contract are not stated, but the complaint specifies several alleged deficiencies. Where a city council or board of trustees acts dishonestly and fraudulently to the detriment of the district there is no doubt that its action may be the subject of judicial inquiry. Plaintiffs must fail in the instant case for the reason that the case as presented falls short of establishing fraud on the part of the town's officials who were charged with the duty of making the public improvements.

Upon the trial plaintiffs called a number of witnesses whose testimony was to the effect that the local red rock used as pavement upon portions of two streets and as shoulders of the paved portion of other streets did not comply with the specifications. Said specifications provided: "All rock to be used in this work shall be sound local chert and broken to such size that all will pass through a ring 2½ inches in diameter and at least 70 per cent will be retained on a ring one-half inch in diameter." Witnesses on behalf of plaintiffs testified that a large portion of the rock was too large by several inches to go through a two

and one-half inch screen, and that it also contained a large quantity of material so fine as to be classified as dirt or dust rather than rock. If the question whether the work had been fully performed according to the contract had been presented to the trial court in an original proceeding in which it had jurisdiction, the court's decision would have been final upon a question of conflicting evidence even though another court would have taken a contrary view, but the duty of deciding that question has been confided by the legislature to the city council or such other governing board as may be charged with the duty of initiating and performing all street improvement work. This court and the courts of all other states of the Union, as a matter of public policy and necessity, have zealously guarded the power and jurisdiction of municipal public bodies in the performance of the duty with which they are specially charged, and have limited the jurisdiction of courts to declare their action invalid to extreme cases.

As an illustration of the rule it is necessary to cite or discuss but a few of the many decisions and text-writers which are in agreement upon the subject. Page and Jones on Taxation by Assessment, page 1580, says: "The act of the common council or other corresponding body in confirming an assessment is said to be an exercise of *quasi*-judicial power. Where this effect is given to an order or decree of confirmation, such order or decree is final and conclusive as between the parties and cannot be attacked collaterally by any of the parties thereto, unless the proceedings or the order of confirmation are absolutely void. If the record shows that the court or other tribunal by which an assessment is confirmed has jurisdiction, a judgment, decree or order of confirmation made by such court or other tribunal is final and conclusive between the parties and is not subject to collateral attack."

In *Heft* v. *Payne*, 97 Cal. 108 [31 Pac. 844], it was held that the property owner has nothing to say in determining whether the work shall or shall not be done by the contractor, nor, in the absence of fraud, whether the work has been done according to the contract.

In *Lambert* v. *Bates*, 137 Cal. 676, 678 [70 Pac. 777], this court said: "The legislature has thus not only provided a tribunal for the purpose of determining whether the con-

tractor has completed his contract according to its terms, but it has also declared that the decisions and determinations of that tribunal upon this question shall be 'final and conclusive' as to all errors which it *might* have remedied. Whether the work in the present case was done in conformity with the contract to the official grade was a fact to be determined in the first instance by the superintendent of streets. The Street Improvement Act declares that all street work shall be done under his direction and to his satisfaction, and it is alleged herein and found by the court that the work was accepted and approved by him, and that he thereupon made the assessment upon which the action is brought. If, in fact, he accepted the work and made the assessment before the contract was fulfilled, such determination or act was an error of that officer which the council might have remedied. It was within the functions of that body, upon the defendant's appeal, to determine whether in fact the work provided for in the contract had been fully performed or not, and under the above provision of section 11, its action in overruling said appeal and dismissing the same is final and conclusive upon him. The council acted judicially in its determination upon the appeal. (*Belser* v. *Hoffschneider,* 104 Cal. 455 [38 Pac. 312]), and, as in the case of the judgment of any tribunal for which there is no review provided by statute, its action must be held conclusive whenever the fact determined by it is brought into question before any other tribunal. (*Lewis* v. *Barclay,* 35 Cal. 213; *Fairchild* v. *Wall,* 93 Cal. 401 [29 Pac. 60]; Van Fleet on Former Adjudications, sec. 7; *Demarest* v. *Darg,* 32 N. Y. 281; *Culross* v. *Gibbons,* 130 N. Y. 447 [29 N. E. 839].)''

Speaking to the question as to the case presented to the council as distinguished from the case made in the superior court, the decision above cited holds that the legislature did not intend that the appeal to the council should be prosecuted in a perfunctory manner or should be a mere formality. It devolves upon protestants to show that sufficient evidence was adduced to support the appeal, and if the council should overrule the appeal because of its misapplication of the law to the facts, it is incumbent upon the party seeking the review to clearly present to that tribunal the questions of law which he claims to have been miscon-

strued or erroneously applied, and show that they have been presented upon the appeal to the council. It cannot be presumed that the council made an erroneous decision upon the evidence which he did present. Continuing, the court said: "If he failed or omitted to present to that body the evidence which he afterwards presented to the superior court upon the trial herein, he is in the same position as any litigant who has rested his case upon insufficient evidence. If the statute does not authorize a new trial or a reexamination of such evidence, he must abide the decision of that tribunal." (See, also, *Cutting* v. *Vaughn*, 182 Cal. 151 [187 Pac. 19].)

In the instant case it is by no means made clear what evidence was presented in the council hearing directed to the issue of fraud as distinguished from the case presented in the superior court. The appeal to the council continued through three evenings, while the trial in the superior court consumed six days. It is, therefore, evident that the proceeding in the court trial was at least much fuller than the council proceeding could possibly have been.

█ Numerous authorities are in agreement to the effect that if the improvement substantially complies with the contract, no grounds exist for invalidating the assessment. In considering the question of substantial compliance in the particular situation, as in the instant case, the fact that the *locus* of the improvement is upon a hillside where the contour of the earth's surface is broken and irregular forms an important factor. Also, the magnitude and character of the improvement is to be considered. It is the rule of construction that where a street or public improvement contract has been departed from to avoid an unforeseen incongruity, such as changing the grade fixed by the contract so as to make the improvement conform to the grades of intersecting streets and highways anciently established, or to avoid an engineering error or miscalculation which would lead to an absurdity, or where changes would benefit the property owners and would cause no material detriment to the improvement, the city council is fully warranted and acts within the plenary power with which it is clothed by the legislature in passing upon the contractor's work, though there may be found departures, as above indicated, from the plans and specifications. █ Plenary power was conferred upon municipal

governing boards doubtless for the purpose of giving them wide latitude in matters of discretion for the definite reason that in determining the question of compliance with street improvement contracts wide discretion is necessary from the very nature of the work to be performed. Official efficiency requires that their hands be not too tightly tied.

The rule applicable to a city council in its consideration of departures from the provisions of a street improvement contract is general, and applies to reclamation districts and other public bodies as well. In *Reclamation District No. 3 v. Goldman,* 65 Cal. 635 [4 Pac. 476, 681], it is stated in the following language: "Nor do we think that a deviation from the approved plans in making the reclamation, where no injury results from such deviation, but rather a benefit, is outside of the discretion vested by the statute in the trustees. Some discretion must be left to the trustees in regard to the work, and a trifling deviation from the plans, or a deviation which would result in benefit, should not be regarded as a violation of the requirements of the statute. A work of reclamation with a deviation justifiable under the circumstances may well be regarded as a substantial compliance with the original approved plans."

In the instant case no property owner at the board hearing claimed damage, direct or special, by reason of said changes. The court, conceding the second amended complaint to be sufficient, was limited to a determination whether the board acted fraudulently and arbitrarily in deciding against the protestants. The record indicates that the plaintiffs, as protestants, introduced at the board of trustees' hearing some evidence, the extent of which does not appear, similar in import to that introduced upon the trial. The record also shows that the members of the council, in overruling the protests, relied upon personal inspections made by them which showed the streets and rock shoulders to be in sound condition, with some larger rocks and dust present only to an immaterial extent not affecting the quality of the work, and that said board members also acted upon the statements of the contractor and his superintendent that if larger rock were originally placed upon the streets it would be crushed by the action of the twelve-ton roller which the specifications required to be used and which was in fact used. Some of the larger rock was crushed by

hand. In view of this evidence we cannot brand the action of the board as fraudulent. ■ The fact that the rock was not screened before being dumped upon the streets after being brought from a near-by quarry, and that protests concerning the size of the rock were made to members of the board during the course of the work, is not conclusive proof that the streets as finished did not substantially meet the requirements of the contract. The issue about which protestants' case centers involved but a very small cost compared with the cost of the entire expenditure, being something like four per cent of the gross cost.

■ The claim is also made that the work was not performed according to the grades established by the plans and specifications. Protestants' chief witness, Edward A. Parry, a surveyor, estimated the grades from the blue-prints, and gave as a result of his estimate a large number of instances in which the work as completed varied from the grades called for in the blue-prints, and claimed in some cases the variation amounted to several feet. A table prepared by him to show the variations was introduced in evidence. Mr. Parry gave similar testimony at the hearing of the protests before the board of trustees. Defendants introduced evidence, which was not shaken, to the effect that the work was graded according to the stakes set by the engineer and approved by the city, and that reasonable changes were made at the request of property owners and others to adjust the grade of the streets at points where they joined streets outside the district which were already completed. Charles E. Sloan, a civil engineer, whose qualifications were admitted, pointed out some forty errors in reading 128 stations in the calculations of Mr. Parry, including some in which the greatest variances were claimed to exist, and presented a table which showed that the variations were neither as numerous nor as large as Mr. Parry's estimate would indicate. Before overruling plaintiffs' protests, members of the board conferred with the engineer and contractor as to the grades. The board was not bound to accept the testimony of protestants' witness introduced upon the hearing if their own knowledge, investigation and consideration of the evidence convinced them that the work as completed was in substantial compliance with the contract, as certified by the engineer. It was the exclusive function

of the board to determine all conflicts which may have arisen during the hearing.

Unsavory inferences of collusion are predicated upon the fact that the engineer, whose compensation was fixed at eight and one-fourth per cent upon the cost of the improvement, paid to his specially employed counsel, whose residence was in San Mateo County, and who was present at practically every one of the many meetings of the board of trustees, one per cent or one-quarter of one per cent, whichever fact may be, of said compensation allowed said engineer. The engineer's fee, it appears, had been fixed by resolution of the board prior to the doing of the work, and it was first established by the board at a time when the personnel of the board was not composed of the same members as here sought to be bound by the judgment. As a matter of fact, trustee Hannon, who is now associated with protestants, voted for the resolution. It has not been shown that the fee was unreasonable or disproportionate to fees allowed for similar services. In fact, the contrary appears. The board knew that the engineer, in order to protect himself in an important matter fraught with legal complications, intended to employ expert assistance, and we have been cited to no section of the laws under which the town of Sausalito is organized that would prohibit the engineer from using a part of his compensation for the employment of an attorney, nor do we see that the transaction could in any remote degree tend to establish fraud on the part of the board or the engineer. The fact that the town had a regularly appointed attorney would not change the situation, and unless there is some provision of law forbidding it, the town can also employ special counsel to take charge of important litigation in which it is interested. There is nothing in the circumstance as it is related which tends to cast suspicion upon the good faith of the board or the engineer. We know of no reason why an engineer, in fixing his compensation, may not include in his estimate such an item. The amount of the attorney's fees was approximately $500. This matter, it will be noted from an examination of the statute, does not present a jurisdictional question.

The engineer employed by the board had been employed in other street improvement districts in Sausalito at the

same rate of compensation he was to receive for his services in district C. It appears that in addition to performing engineering work prescribed by the act, he prepared the assessment under the direction of the superintendent of streets, and that the cost of preparing the assessment, which the statute expressly allows as a proper incidental expense, is included in the engineer's fee.

Plaintiffs argue that the assessment appears to be void on its face. The board ordered the total amount of the assessment reduced $184.75 upon ascertaining that expenses for printing and advertising not chargeable to district C had been included in the incidental expenses, but did not order a proportionate reduction in the amount of the separate assessments against each parcel of property in the district. The board gave extended consideration to many vexatious problems arising out of the project, and ordered a large number of changes in the separate assessments, both by way of reduction and increase, before confirming it. The final assessment, as amended to conform to the order of the board, was not rendered invalid because the board did not first make the inconsequential reduction in the separate assessments which would result from spreading $184.75 over 650 parcels of property. Conceding the respondents to be technically correct in their claim, the *de minimis* rule might properly be applied in the light of the multitude of perplexing factors which the board was called upon to compose.

Plaintiffs feel aggrieved at the failure of the board to order the preparation of a new assessment and to allow a further period of protest after ordering changes made in the assessment by the resolution of December 4, 1925. As amended in 1923, the act provides that after completion of the work the assessment shall be filed with the city clerk, who shall give notice of a time for hearing protests, but that it shall not be recorded in the office of the superintendent of streets until after the determinations of the council upon appeal have been complied with. In the copy of the assessment in the record herein, October 22, 1925, had originally been written in as the date of record, but a line had been drawn through said date and December 4, 1925, inserted in lieu thereof, Superintendent of Streets Madden initialing the change. It is obvious that October 22, 1925, the date of filing with the clerk, was inadvertently written

in as the date of recording, instead of the true date, December 4, 1925. Plaintiffs were not entitled to an additional period of protest after the latter date. The act expressly provides for amendment of the assessment as filed without the necessity of an entire new assessment or additional time to protest the assessment as amended. As this court said in *Johnson* v. *City of Los Angeles,* 210 Cal. 240 [291 Pac. 395, 396] : " . . . when the roll [assessment-roll] is lodged with the clerk for presentation to the council and notice is duly given to the property owners to be affected thereby of the specified date of hearing thereon, the whole assessment roll is in a state of flux and each property owner is charged with knowledge of the number of pieces of property to be assessed, the amount to be raised, the interdependence of the properties upon each other, and the fact that power to modify necessarily carries with it power to increase as well as decrease any assessment made by the board of public works. The property owner who fails to appear must be held to have acquiesced in any action the city council might take upon consideration of said roll, either by increasing or decreasing the assessment as to him. In fact, we see no reason why, even in the absence of protest or objection, the council may not, after due notice, modify or raise any assessment and then confirm the same." (See, also, *Gadd* v. *Workman,* 200 Cal. 384 [253 Pac. 700].) It follows that even though the council orders changes made in the assessments of property where the owners made no objection to the assessment as originally filed, and for whom an additional period of protest is not provided in the act, no ground of objection to the assessment is thereby furnished. The assessment in the instant case, as amended, conforms to the order of the board of trustees. There is no room for the claim that the protestants were denied full opportunity to present their objections.

The record herein indicates that incidental expenses for printing and advertising were paid from the city treasury, which was later reimbursed for these advances in full, and that one or more warrants drawn upon the city treasury were issued to the engineer for a portion of his fee. There is evidence of an understanding that these warrants were not to be cashed until the contractor had advanced amounts for incidental expenses sufficient to pay

them. Section 17 requires the contractor, before receiving his contract, to advance to the superintendent of streets, for payment by him, the amount of all incidental expenses incurred to date, and section 23 provides that the warrant to collect the assessment shall not be delivered to the contractor until after he shall have paid to the superintendent of streets the amount of incidental expenses not previously paid. The evidence as to whether verified claims for certain of the incidental expenses were presented, as required by the act (sec. 79), is also in a state of uncertainty. It was established that reimbursement in full had been made for the printing and advertising expenses, and it seems probable that reimbursement had also been made for amounts paid the engineer, if any portion of his fee was in fact paid from the treasury. The protests filed with the board do not urge these grounds of objection. These irregularities as to incidental expenses are not jurisdictional and do not invalidate the assessment.

The act provides for the appointment by the superintendent of streets of an inspector, whose duty it shall be to see that the contract is fulfilled in every respect, and whose compensation at the time the proceedings herein were had was not to exceed $7 per day. An inspector was appointed in the instant case by resolution of the board of trustees rather than by appointment of the superintendent of streets. He was paid $435, at the rate of $5 a day, from the city treasury, which has not since been reimbursed. The assessment does not include this item. The only allowance for inspection is to the engineer for inspections made by him. The assessment is not rendered invalid because a proper item of incidental expense has been omitted therefrom. The validity of the assessment does not, however, affect the fact that payment from the city treasury may be an improper expenditure of public funds, for which a remedy exists as in the case of unauthorized expenditures in general.

The participation of trustee Madden, who was also superintendent of streets, in the vote to confirm the assessment, over the objection of protestants that in so doing he was passing upon his own assessment prepared by him as superintendent of streets, did not prejudice plaintiffs, since a majority, not including Madden, voted in favor of the

resolution. Complaint is made against the action of the board in holding an executive session for a period of time on the night of December 1st after the public hearing had been in session for some time. This action does not indicate a fraudulent design on the part of the board. Certainly the board acted within its rights in considering the matter in executive session before voting in open meeting upon the protests, and it would matter not at all whether the executive session was held in advance of, at the close of, or intervening the opening and closing of said open meeting. No proof was offered tending to show that any conspiracy or plot against the protestants was attempted, or that any evil design influenced the members of the board who attended. One of the members of the board, a brother of one of the protestants, and who was hostile to his fellow trustees, was no doubt in attendance upon said executive session, and as he was a willing witness at the trial for protestants, he would doubtless have freely communicated to protestants whatever transpired of a prejudicial nature to them during said session.

Appellants have presented a number of assignments of error, among which are objections to the pleading and the ruling of the court in refusing to permit them to call witnesses after the evidence had closed, at which juncture protestants were allowed to file a second amended complaint containing allegations which appellants claim they had no occasion to meet in the trial, as they were not pleaded, and therefore not issues in the trial, and that they were denied the opportunity to rebut said allegations after the case was closed. They asked that the case be opened for that purpose, but the court ruled that said matters were sufficiently put in issue during the trial. Complaint is also made that the pleading under which the case was actually tried was wholly deficient in its allegations of fraud. It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which amount to mere conclusions. The second amended complaint in some respects may be sufficiently descriptive to meet the objection, while it is deficient in other allegations. Fraud being a term which imputes venality and corruption to the person

charged, should be clearly proved and satisfactorily established, especially where the persons charged are public officers vested with wide discretionary powers. If official acts may be explained on any reasonable theory of duty honestly, even though mistakenly performed, they must be resolved in favor of the presumption, which may not be lightly ignored. This is made doubly true where no substantial evidence, as in the instant case, points to a corrupt motive or dishonest purpose on the part of the accused. A wide divergence of views, especially in matters where local taxation for public improvements is involved, frequently exists. Suspicions easily aroused and baseless charges of dishonesty hurled in the acrimony of controversy have a tendency to defeat rather than promote efficiency in the administration of public affairs. It may be that considerations akin to those here suggested furnish a partial explanation for the wide discretion and power of finality in the determination of issues with which recent legislative acts have vested municipal bodies in matters of street improvements.

The case no doubt presented a number of difficult questions to the learned trial judge, as it has to us, and the record shows that unnecessary vehemence characterized the conduct of the case, which did not aid the trial court in its labors.

Upon an examination of the record, we are of the view that many of the acts of the board complained against are not jurisdictional and were concluded by the board's acceptance of the work. We are also of the further view that the evidence as it now stands is not sufficiently definite and certain to sustain a judgment of either actual or constructive fraud against the board of trustees and the other municipal officers who are joined as co-defendants in the action, or against any of them.

It may be added in conclusion that there is much evidence in the record to the effect that the improvement as a whole was done in a good and workmanlike manner.

Judgment and order reversed.