ROOSEVELT COUNTY, Respondent, v. STATE BOARD OF EQUALIZATION, et al., Appellants.

No. 8566

Submitted May 18, 1945. Decided October 1, 1945.

162 Pac. (2d) 887

Mr. R. V. Bottomly, Attorney General, and Mr. I. W. Choate, Tax Counsel, of Helena, for appellants.

Mr. Arlie M. Foor, of Wolf Point, and Albert H. Angstman and Lester H. Loble, both of Helena, for the respondent.

MR. JUSTICE ADAIR delivered the opinion of the court.

Mandamus. In this action the plaintiff, Roosevelt County, sought a writ of mandate to compel the defendants, as the State Board of Equalization of the state of Montana, to rescind their action in rejecting the county's claim for gasoline tax refund and to approve such claim. The cause was tried in the court below on an agreed statement of facts and thereafter judgment rendered for plaintiff from which defendants have appealed.

Between May 4 and October 3, 1942, Roosevelt County made 230 separate purchases of gasoline totaling 14,932.2 gallons on which it paid into the treasury of the state of Montana a tax of 5c per gallon, amounting to $746.61. All of the gasoline so purchased was used by the county in the operation of gas-propelled graders, trucks and pickups used in the construction, maintenance and repair of public highways in the county. On November 9, 1942, the county filed with the State Board. of Equalization its claim for a refund of the gasoline tax so paid by it on the 14,932.2 gallons so purchased and used. The claim was accompanied by 230 separate invoices issued to the county by the various gasoline dealers at the time the various purchases were made. The claim was verified by the affidavit of the chairman of the board of county commissioners of Roosevelt county

who was, by the board, authorized to present the application for refund.

Attached to the county's claim was an invoice numbered 3331, originally dated "5-4-42," indicating a sale to the county of 65 gallons of gasoline on which the county paid a gasoline tax of $3.25. Some time after the issuance of the invoice and before its presentation to the State Board of Equalization the date appearing on said invoice had been changed to read "5-14-42," thus indicating a purchase of 65 gallons of gasoline on May 14th instead of May 4th, 1942. Duplicate lists of invoices containing a tally also accompanied the claim and the typewritten date appearing on the tally of invoice No. 3331 originally was "5-4-42" but prior to presentation of the claim such date had been altered to read "5-14-42." Investigation made by the State Board of Equalization disclosed that the copy of invoice No. 3331 retained by the issuing dealer bore the date "5-4-42."

Chapter 67, Laws of 1939, requires all applications for gasoline tax refunds or drawbacks to be filed with the State Board of Equalization "within six (6) months after the date on which such gasoline was purchased as shown by such invoices." The point in connection with invoice No. 3331 is that since the county's claim for gasoline tax refund was not filed until November 9th, if the purchase of the 65 gallons of gasoline was made on May 4th, then the refund was barred by the above six-months limitation of Chapter 67 of the Laws of 1939, whereas if the purchase was made on May 14th, the application would have been in time and would have been filed five days before the expiration of the statutory six-month period.

It is agreed that the one and only invoice accompanying the county's claim which bears evidence of alteration is invoice No. 3331 and that it was and is the only invoice presented to the State Board of Equalization upon which the refund was barred if the purchase of gasoline was in fact made on May 4th and not on May 14th, 1942.

Following its examination and investigation of the county's claim of $746.61 for gasoline tax refund, the defendant State

Board of Equalization and its members determined that, as to the one item of $3.25, being the tax paid on the 65 gallons of gasoline purchased under invoice No. 3331, the invoice and tally list had been fraudulently altered and that the county's claim and affidavit attached thereto contained statements which were wilfully false. Thereupon the defendant board rejected the county's claim in toto following which the county commenced this action to compel the board to rescind its action and to allow the county's application for the gasoline tax refund claimed in the amount of $743.36 on the 229 invoices representing purchases on which there was no question, the balance of $3.25 representing the gasoline tax paid on invoice No. 3331 to depend upon whether the purchase was made on May 4th or May 14th, 1942.

Chapter 67, Laws of 1939, p. 118, in part, provides: ''Should the board of equalization, after investigation, find that the statement so made by said consumer contains errors which, in the opinion of the board were not inserted for the purpose of fraud, it may correct the statement and approve the same as corrected whereupon warrant shall issue, after approval by the state board of examiners, as above provided, or the board may, in its discretion, require the claimant to file an amended statement before action is taken thereon. If upon investigation it shall be determined by the state board of equalization that any claim has been fraudulently presented or is supported, as to any item therein by invoice or invoices fraudulently made or altered in any manner, or that any statement in the claim contained or the affidavit thereto, is wilfully false in any particular and so made for the purpose of misleading said board, the board may reject such claim *in toto*.''

The defendants rely upon the last sentence above quoted for their authority to reject the county's claim in toto, but it would seem that the agreed and stipulated facts in this case would prevent such drastic action on the part of defendants. Paragraph 13 of the agreed statement reads:

''That the governing body of Roosevelt County (its board

of county commissioners) did not authorize any of its officers, agents or employees to present any fraudulent claim for gasoline tax refund or to fraudulently alter any claim in any particular.

"That the board of county commissioners did, however, authorize Frank Fairley, its chairman, to present a gasoline tax refund claim for the 14,932.2 gallons of gasoline shown on the claim for gasoline tax refund which was actually thereafter presented on behalf of said county.

"That the said board of county commissioners of Roosevelt County never gave any general or specific authorization to Frank Fairley, its chairman, to present a fraudulent or altered claim for gasoline tax refund. That said Fairley did not personally alter nor change the claim for gasoline tax refund that was presented to the Board; that he did not then know and does not now know when or by whom said claim was changed or altered. Before signing and presenting said claim to the Board, said Fairley did not examine each invoice or each item going to make up the entire claim but assumed that they were correct and that they had not been altered or changed."

It must be kept in mind that the State Board of Equalization of the state of Montana is an administrative body functioning as a bureau of the executive department of the state government and that the application for gasoline tax refund presented to it was and is the application of a county which is but a political subdivision of the state of Montana.

"A county is but an agency or arm of the state government, created, organized, and existing for civil and political purposes, particularly for the purpose of administering locally the general powers and policies of the state, and as a matter of public convenience in the administration of the government. It is generally a subordinate part of the sovereignty of the state itself, and is not an independent governmental entity." 20 C. J. S., Counties, sec. 1, pp. 754, 755. The creation of counties is absolutely essential and indispensable to the formation of a state government. Frantz v. Autry, 18 Okl. 561, 91 Pac. 193. "It

is well-established law that a county is an involuntary corporation for governmental purposes, and is in no sense a business corporation; that the powers and obligations of the county are such only as the law prescribes or as arise by necessary implication therefrom." Hersey v. Neilson, 47 Mont. 132, 142, 131 Pac. 30, 32, Ann. Cas. 1914C, 963.

All officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it. "Every public officer is bound to perform the duties of his office honestly, faithfully, and to the best of his ability, in such a manner as to be above suspicion of irregularities, and to act primarily for the benefit of the public. An attempt to exercise those powers corruptly—* * * or in bad faith—for some improper purpose is null and void." 43 Am. Jur. sec. 261, p. 78.

"Everyone is required to take notice of the extent of authority conferred by law on a person acting in an official capacity, and this is true for the reason that the government is not bound by an act of its agent unless the agent was acting within the scope of his authority, * * *. Persons who deal with public officers are also held to a recognition of the fact that government agents are bound to fairness and good faith as between themselves and their principal." 43 Am. Jur., sec. 256, pp. 73, 74.

In the instant case it was expressly stipulated and agreed ▓ that the board of county commissioners did not authorize any of its officers, agents or employees to present any fraudulent claim for gasoline tax refund or to fraudulently alter any claim in any particular; that the chairman of the board "did not personally alter nor change the claim" and "that he did not then know and does not now know when or by whom said claim was changed or altered." Thus, under the agreed facts, there is no fraud chargeable to the board of county commissioners in presenting or filing the county's claim and if, without the knowledge of the members of the board, the invoice and tally had been altered by a wrongful act of a subordinate, such misfeasance still would not warrant the rejection in toto of the

county's claim. "It is settled, subject, however, to a number of exceptions, that in the absence of a statute imposing liability, or of negligence on his part in appointing or supervising his assistants, an officer is not liable for the default or misfeasance of subordinates and assistants, whether appointed by him or not, providing the subordinates or assistants, by virtue of the law and of the appointment, become in a sense officers themselves, or servants of the public, as distinguished from servants of the officer, and providing the officer does not direct the act complained of, or personally cooperate in the negligence from which the injury results." 43 Am. Jur., sec. 281, pp. 94, 95.

. Clearly the law does not authorize any officer, agent or employee of the county to change or alter any part of the county's claim nor to prepare, present or file any fraudulent claim for gasoline tax refund and it is equally clear that the county did not and that it could not authorize the presenting or filing of any false or fraudulent claim. "An officer can * * * bind his government only by acts which come within the just exercise of his official powers and within the scope of his authority. * * *. An unauthorized act or declaration of an officer does not estop the government from insisting on its invalidity." 43 Am. Jur., sec. 254, pp. 71, 72. "The county is not bound by the acts of the board (of county commissioners) when outside of or beyond the scope of its authority. Public moneys are but trust funds, and officers but trustees for their administration in the manner, and for the purposes, prescribed by statute." Carbon County v. Draper, 84 Mont. 413, 420, 276 Pac. 667, 669. "It is well settled that a county board possesses and can exercise such powers, and such powers only, as are expressly conferred on it by the constitution and the statutes of the state, or such powers as arise by necessary implication from those expressly granted, or such as are requisite to the performance of the duties which are imposed on it by law." 20 C. J. S., Counties, sec. 82, p. 850. Acts done outside the board's statutory authority are void and not binding on the county.

38

Lebcher v. Board of Com'rs of Custer County, 9 Mont. 314, 23 Pac. 713.

The claim is the claim of the county and most certainly no person was authorized by law to do or suffer any fraudulent act in connection with the making, filing or presenting of such claim. This being the case, the defendants may not brand and reject the county's claim as fraudulent. If, upon investigation, defendants were to determine that the purchase of 65 gallons of gasoline by the plaintiff county represented by invoice No. 3331 was made on May 4th, 1942, and not on May 14th, 1942, then it became their duty under the law to correct the county's statement by eliminating the item of $3.25 representing the tax paid on such purchase, upon the ground that the application for the refund of this item was not filed with the defendant board within six months after the date on which such gasoline was purchased, Chapter 67, Laws of 1939, but as to the other items, all found to be correct and filed in time, totaling the sum of $743.36, the county's application for refund should have been approved.

"Fraud, being a term which imputes venality and corruption to the person charged, should be clearly proved and satisfactorily established, especially where the persons charged are public officers vested with wide discretionary powers. If official acts may be explained on any reasonable theory of duty honestly, even though mistakenly performed, it must be resolved in favor of the presumption, which may not be lightly ignored. This is made doubly true where no substantial evidence, as in the instant case, points to a corrupt motive or dishonest purpose on the part of the accused. * * * Suspicions easily aroused and baseless charges of dishonesty hurled in the acrimony of controversy have a tendency to defeat, rather than promote, efficiency in the administration of public affairs." Hannon v. Madden, 214 Cal. 251, 5 Pac. (2d) 4, 11.

In this case the district court made and rendered a money judgment that the plaintiff "have and recover from the defendants the sum of $743.36 together with plaintiff's costs

and disbursements.'' This judgment was and is erroneous under the pleadings in this cause. Instead the district court should have ordered a peremptory writ of mandate to issue requiring defendants to rescind their action in rejecting plaintiff's claim in toto and requiring that such claim be approved and allowed in the sum of $743.36 and that the claim then be transmitted to the state board of examiners and state auditor for approval and payment.

The cause is ordered remanded to the district court with directions to vacate the judgment heretofore entered and to issue a peremptory writ of mandate in conformity with this opinion.

Mr. Chief Justice Johnson and Associate Justices Morris and Cheadle concur.

Honorable Lyman H. Bennett, District Judge, sitting in place of Angstman, J., disqualified, dissents.

Rehearing denied November 13, 1945.