[S. F. No. 14933. In Bank.—January 30, 1934.]

D. C. BROOKS, Respondent, v. CITY OF GILROY (a Municipal Corporation), Appellant.

E. D. Crawford, D. T. Jenkins and Walter G. Fitzgerald for Appellant.

Kirkbride, Wilson & Brooks and John D. Willard for Respondent.

CURTIS, J.—This action was instituted by the plaintiff against the City of Gilroy upon a claim assigned to him by Charles E. Sloan to recover for services as an engineer, alleged to have been performed by Sloan for said city in connection with certain street improvements which the City of Gilroy planned to construct in said city. There is no

conflict in the evidence as to the rendition of the services by Sloan or as to their reasonable value. Upon these issues the court found in favor of the plaintiff, and rendered judgment in his favor for the sum of $11,621.12. From this judgment, the defendant city has appealed.

It is first contended by the City of Gilroy that the contract whereby it employed Sloan to act as engineer in connection with said street improvement work was invalid and without any legal binding effect for the reason that said city at the date it entered into said contract of employment had a legally appointed and acting city engineer. It is admitted that Sloan's employment was made under the provisions of section 41 of the Improvement Act of 1911, under which the said city was acting in making said street improvements. This section provides in part as follows: ''In all those cities where there is no city engineer, the city council thereof is hereby authorized and empowered to appoint a suitable person to discharge the duties herein laid down as those of city engineer, and all the provisions hereof applicable to the city engineer shall apply to such person so appointed. Said city council is hereby empowered to fix his compensation for such services.'' (Stats. 1911, p. 751.)

The defense that the contract was illegal for the reason that the City of Gilroy had a city engineer at the time it entered into said contract with Sloan was not made in the pleadings, nor did the court make any finding regarding that issue. It does not appear that at the trial of this action this defense was particularly stressed nor was it openly relied upon by the City of Gilroy. This may have been the reason why the court failed to find whether said city had a legally appointed and qualified city engineer at the time it entered into its contract with Sloan. There is some evidence, which was probably incompetent, and which no doubt would have been denied admission had objection been made to its introduction, that on January 9, 1924, when the city council of the City of Gilroy first took official action regarding Sloan's appointment, the City of Gilroy had an acting city engineer by the name of H. B. Fisher, who some time in the year 1912 had been appointed city engineer of said city, or at least had been employed by said city to perform certain engineering work for said city. We will assume, however, simply for the purpose of this discussion, but not

in any way determining that such was the fact, that H. B. Fisher was on the ninth day of January, 1924, city engineer of the City of Gilroy. To properly determine, however, whether Sloan's appointment was illegal by reason of the assumed fact that the City of Gilroy had a city engineer at the time it entered into its employment of Sloan, it is necessary to make a more detailed statement of facts than we have made above. It appears from the record before us that under date of January 9, 1924, Sloan wrote and delivered a letter to the mayor and common council of the City of Gilroy asking to be appointed city engineer in connection with its contemplated street improvement and paving work. In this letter, he stated that he would do the required engineering work for said improvement, including supervision of construction, for a compensation of eight per cent of the contract price of said improvement. On the same day the council met and passed a resolution "that we hire Charles E. Sloan as per his agreement on the table", evidently referring to Sloan's letter. On February 11, 1924, the city council again met and at this meeting declared the office of city engineer vacant, and appointed Charles E. Sloan to said office. On March 3, 1924, Sloan was authorized to prepare plans and specifications for said work and improvements, and on March 17, 1924, the city council adopted the plans and specifications for the paving of said streets prepared by Sloan and fixed his compensation at eight per cent of the contract price of said work and improvement. Thereafter, the council passed a resolution of intention to do said work, and subsequently took all the necessary proceedings required by the statute for the construction of said work and improvement, including the awarding of the contract to the Southwest Paving Company for the sum of $464,845. No contract, however, was entered into with said company for said work and improvement, and on September 11, 1924, the city council by resolution abandoned said proceedings, and the bond given by said paving company at the time of the filing of its bid was ordered returned to said company. On May 4, 1926, Sloan presented a claim to the city council for his services rendered in said proceeding in the amount of $30,263.37, which claim was rejected by the council on the day of its presentation. Sloan thereafter assigned his claim to the plaintiff, and on August 12, 1926, plaintiff commenced

this action on said claim. Upon a trial of the case before the court, as stated above, judgment was rendered for plaintiff in the sum of $11,621.12, for the reasonable value of said services.

From the foregoing statement of facts, it is quite evident if the city council was without authority on January 9, 1924, to appoint Sloan to act as city engineer in the construction of said work and improvement by reason of the fact that said city had at that date a duly appointed and qualified city engineer, that on February 11, 1924, after it had declared the office of city engineer vacant, such lack of power to so employ Sloan no longer existed. The record shows that after the city, on February 11, 1924, had declared the office of city engineer vacant, it then proceeded to appoint Sloan to such position. After this appointment of Sloan, he was directed to prepare the plans and specifications for the contemplated street work and his compensation was fixed, and it was under this employment that he performed the services for which his assignee was awarded judgment. It, therefore, appears to us to be entirely immaterial, as far as the legality of Sloan's employment is involved, whether the City of Gilroy had a city engineer on January 9, 1924, or at any other time prior to February 11, 1924, when Sloan was employed. It is true the trial court found that Sloan was appointed city engineer on January 9, 1924, and based its judgment in plaintiff's favor on that finding. But in view of the undisputed evidence before us, we do not think the actual date of Sloan's appointment is controlling if the evidence shows, as it does without any contradiction, that, if he was not legally employed on the prior date, he was on the subsequent date, after which he rendered the services here involved.

It is next contended by appellant that the percentage contract between Sloan and the City of Gilroy was illegal for the reason that Sloan was on March 17, 1924, when the resolution was passed by the City of Gilroy fixing Sloan's compensation at eight per cent of the total cost of said improvement, an officer of said city, to wit, its city engineer, and was, therefore, prohibited by law from being interested in any contract made with the city. Appellant relies upon *Kennedy* v. *City of Gustine*, 199 Cal. 251 [248 Pac. 910], in support of this contention. That case is very similar to

the present case. An engineer was suing for services rendered by him under circumstances which were in principle precisely like those involved in this case. It was contended by the city that the engineer was an officer of the city and, therefore, his contract with the city was void. The court held that he was not an officer of the city, and affirmed a judgment awarding him compensation for his services. In the course of the opinion, the court said (p. 255) : "It is clear, however, that the plaintiff was not an officer of the city but that he was employed, not to discharge the general duties of the office of city engineer, but only the particular engineering work specified in the contract." We think this was the nature of Sloan's employment by the city. In his letter dated January 9, 1924, he says: "I hereby make application to be appointed city engineer in connection with your contemplated street improvement and paving work," and, as we have seen, the resolution adopted that day in response to Sloan's application was "that we hire Charles E. Sloan as per his agreement on the table" (meaning no doubt the January 9th letter of Sloan's). It is true that in the resolution of the board and in other documents, he is referred to as "city engineer", but such language is not always controlling. It is the nature and character of the services that he is called upon to perform that determine in a large measure whether he was an officer or simply an employee of said city. The evidence in this case shows that Sloan was employed in connection with this particular and definite piece of work and not to perform generally the duties of city engineer. This point was passed upon and decided in *Kennedy* v. *City of Gustine, supra,* where, as we have said, the facts are quite similar to those in the present case. There the court said (p. 255) : "From the minutes of the board of trustees and the contract itself it is clearly apparent, that the plaintiff was not an officer of the city but an employee thereof. Any reference to him in the minutes or the contract or in the evidence as 'city engineer' is not controlling. Whether a position, or office, is a public office depends 'not upon what the particular office in question may be called, nor upon what a statute may call it, but upon the power granted and wielded, the duties and functions performed and other circumstances which manifest the true character of the position and make and mark it a

public office, irrespective of its formal designation'.'' (Citing authorities.) It is apparent therefore that the case of *Kennedy* v. *City of Gustine, supra,* does not support appellant's contention that Sloan was the legally appointed and acting city engineer of the City of Gilroy. On the other hand, we think that case supports the claim of plaintiff that Sloan was simply employed to perform a definite piece of engineering work and not to act as the city engineer of said city.

Another answer to the contention of appellant that Sloan was the city engineer of the City of Gilroy is to be found, we think, in the phraseology of said section 41 of the Improvement Act of 1911. While under the charter of the City of Gilroy, the common council had authority to appoint a city surveyor (which term we think is synonymous with city engineer) it has been appellant's contention all through this case that Sloan was appointed under said section 41 of the Improvement Act of 1911. This section of the act gives the council no authority to appoint a city engineer, but simply authorized the council in cities where there is no city engineer, ''to appoint a suitable person to discharge the duties herein laid down as those of city engineer''. We think that Sloan's appointment was clearly for that limited purpose and not to discharge generally the duties of city engineer. The provision of law relied upon by the appellant, therefore, that an officer of a city is prohibited from being interested in any contract with the city would not apply to Sloan in so far as it concerns his contract with said city.

Another defense interposed by the City of Gilroy was ''that the indebtedness sued upon is greater than the income and revenue of the City of Gilroy for the year in which the same was incurred and also in which it became due and payable, if at all''. It is conceded that the ''indebtedness sued on'' was incurred, if at all, on September 11, 1924, the date on which the city council of the City of Gilroy abandoned the proceedings initiated by said council for the construction of said work and improvement. This would bring said indebtedness within the fiscal year 1924–1925. On the trial it was shown that the balance in the city treasury at the beginning of this fiscal year was $7,551.15 and that the taxes for said year became due and delinquent

on the third Monday in September, 1924. There was, therefore, available the year's taxes for that year in addition to said balance in the treasury with which the city could meet its expenses for said year. It further appeared by a financial statement admitted in evidence in behalf of the city that the balance in the treasury at the end of the fiscal year, 1924–1925, was $8,440.37. It was shown, however, upon cross-examination of the city's accountant that at least one item in said financial statement was illegal. In fact, as to this item, which was paid out for the construction of the Forest Street bridge, it was stipulated "that the payment of all amounts on the bridge are invalid as against this contract and those amounts are deemed to be in the treasury". Reading from the context, it is clear that "this contract" referred to is the contract of the City of Gilroy with Sloan. The amount paid out on the bridge was $4,660. If this amount is added to $8,440.37, which the financial statement of the city showed was in the treasury at the end of the fiscal year after deducting the payment on the bridge, we have as the legal amount in the treasury at the end of said fiscal year over $13,000, which exceeds the amount recovered by the plaintiff on his demand against the city. Such a procedure appears to be the approved method of ascertaining the true balance in the treasury. (6 McQuillin's Municipal Corporations, 2d ed., p. 63.) There were other items in this financial statement which were questioned by the plaintiff, and which were attacked by him in his cross-examination of said accountant. Upon this evidence the court found against the defendant on its affirmative defense that the indebtedness sued upon exceeded the annual income and revenue of the city. We think there was at least a substantial conflict in the evidence upon this issue and in accordance with the well-established rule that an appellate court will not disturb a finding where the evidence is in substantial conflict, this finding of the court must stand.

Appellant in certain parts of its briefs contends that the amount of Sloan's claim as presented to the city council, to wit, $30,263.37, and not the amount found by the court, to wit, $11,621.12, should be the basis on which the court should determine whether the indebtedness due Sloan from the city exceeds its annual income and revenue. We think there is no merit in this contention and the ap-

pellant cites no authority to sustain it. The indebtedness due Sloan was not fixed by the claim presented by him to the city council, but by the findings of the court subsequently made in the action.

Finally appellant contends that there can be no recovery by the plaintiff for the reasonable value of the services performed by Sloan. As already stated, the court found the reasonable value of said services to be a certain sum and gave judgment for this amount. Appellant bases its objection to the judgment so rendered on its contention that the contract was void or at least illegal, and, therefore, an action for the reasonable value of the services performed thereunder would not lie in favor of Sloan or his assignee. We have held, however, that the contract was legal, which is a sufficient answer to appellant's present contention. We might further add that an action based on the reasonable value of said services was the only proper action which would lie in favor of Sloan, notwithstanding his contract for the payment of his services on a percentage basis. As we have seen, the contract was not fully performed by Sloan for the reason that the city council abandoned the proceedings for the construction of said work and improvement before any part thereof was constructed, and Sloan's contract provided for the supervision by him of the construction of said work as the same was to be performed by the contractor to whom the contract might be let. This the city council had the legal right to do. But in such case, according to section 17 of the act, "the incidental expenses incurred previous to such abandonment shall be paid out of the city treasury". By section 79, subdivision third, of said act, "incidental expenses", as used in said act, "shall include the compensation of the city engineer for work done by him". It is quite evident from these sections of the act, that the claim of Sloan, after the abandonment of the work by the city council, was limited to the reasonable value of his services done under the contract, or in the language of the statute, "for work done by him". The same question was before the court in the case of *Kennedy* v. *City of Gustine, supra,* and in its decision this court said: "A city is not primarily liable for the cost of street improvements made pursuant to the terms of the Act of 1911, but the same becomes a lien on the property to be benefited if the

improvements are actually made. Section 17 of the Act, however, provides 'In case the work is abandoned by the city, the incidental expenses incurred previous to such abandonment shall be paid out of the city treasury.' Section 79, subdivision 3, provides: 'The term "incidental expenses", as used in this act, shall include the compensation of the city engineer for work done by him.' It thus appears by the terms of the act . . . that the plaintiff is entitled to reasonable compensation for his services."

We have covered all the points raised by the appellant against the judgment in this action. In our opinion none of them is of sufficient merit to justify a reversal of the judgment.

Respondent has a motion before us for leave to introduce further evidence in this case. It is denied, and the judgment is affirmed.

Preston, J., Langdon, J., Shenk, J., Thompson, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.