[Civ. No. 14759. First Dist., Div. Two. Jan. 29, 1952.]

ALBERT G. RAISCH et al., Appellants, v. SANITARY DISTRICT NO. 1 OF MARIN COUNTY et al., Respondents.

Eugene K. Sturgis and John D. Den-Dulk for Appellants.

R. M. Sims, Jr., and Robert W. Harrison for Respondents.

GOODELL, J.—This appeal is from a judgment in favor of defendants for costs after their demurrer to the amended complaint had been sustained without leave to amend.

In 1948 proceedings were commenced under the Improvement Act of 1911 (Sts. & Hy. Code, § 5000 et seq.) for the construction of a sewer system in the neighborhood of San Anselmo. The board employed respondent Oglesby as "engineer of work" on the project. The cost of the work was $150,130.92, which included $16,751.97 of incidental expenses, $10,670.31 of which represented fees paid to Oglesby in accordance with his contract with the district. To cover the cost of the work an assessment was spread over the district according to benefits, $11,250.28 of which was against the lands owned by the plaintiffs.

Plaintiffs sought an adjudication that the assessment was void and unenforceable "by reason of the interest of . . . Oglesby in the contract and the property within the . . . district . . . while acting as trustee for all of the property owners" therein. The prayer was that the assessment be annulled and a reassessment ordered; that the fees of $10,670.31 paid to Oglesby be repaid, and that the defendants be enjoined from enforcing collection of any assessments on plaintiffs' property and from causing bonds to be issued representing any unpaid assessments thereon.

Respondent Oglesby is a civil engineer who practices his profession in Marin County, where he is county surveyor. His connection with this project, however, was not as such county officer, nor was it as an officer of the district. The district had no engineer of its own and employed him just on this particular project.

A. J. Peters and Son, a corporation, submitted the best bid for the construction of the sewer system, and on September 28, 1948, a contract was entered into between the district and Peters for that work. It was Oglesby's duty under his own contract with the district to see that Peters' contract was properly performed, and the record herein raises no issue as to the performance of that contract by Peters, or as to Oglesby's proper performance of his own contract in supervising Peters' work. The complaint, in fact, alleges that Peters' contract was duly performed.

Harold and Hazel Lang were the owners of a considerable acreage within the assessment district, which they decided to subdivide and it is reasonable to assume that they reached this decision when they did, so that the new system would serve their properties as subdivided rather than as "acreage." They employed Oglesby as the civil engineer to make the subdivision and prepare and file for them a subdivision map. He did this work while also serving as engineer for the district and while Peters was building the sewer system, and the subdivision map was filed on April 27, 1949, some six months before the assessment was made. Appellants' contention is that the acceptance of this outside employment and the doing of this work by Oglesby for the Langs, vitiated the whole assessment. They allege that the subdividing was done without their knowledge and had they known about it they would not have consented to it.

Under the act it is the duty of the engineer, after the contractor's work is completed "to estimate upon the lots

or parcels of land within the assessment district, as shown by the diagram, the benefits arising from such work'' and to assess the total amount of the costs and expenses of such work ''upon the several lots or parcels . . . benefited thereby, in proportion to the estimated benefits to be received by each . . .'' (Sts. & Hy. Code, § 5343; see, also, §§ 5341, 5342, 5360, 5361, 5364 thereof).

Section 5362 of the same code requires the filing of the assessment with the clerk, who shall give by posting and publication not less than 15 days' notice of hearing to ''all persons interested in the work done or in the assessment.''

Section 5366 provides: *''The owners,* the contractor, or his assigns, *and all other persons interested* in any work done under this division, or *in the assessment, feeling aggrieved by any act or determination of the . . . engineer in relation thereto,* or who claim that the work has not been performed according to the contract in a good and substantial manner or who claim that any portion of the work for any reason was omitted or illegally included in the contract or having *or making any objection to the correctness of the assessment or diagram or other act, determination or proceedings of the . . . engineer,* shall prior to the day fixed for the hearing upon the assessment *appeal to the legislative body by briefly stating in writing the grounds of appeal.''* (Italics added.)

The complaint alleges that Oglesby as engineer of work duly made an assessment as required by the act and filed it with the secretary of the district on November 2, 1949; that due notice of the hearing was given, and that plaintiffs in due time filed an appeal from the assessment upon the following grounds: ''1. That each . . . of the assessments levied against lands of the plaintiffs . . . is unjust, unfair, unreasonable, arbitrary, discriminatory and wholly lacking in uniformity with respect to assessments levied on other lands assessed; 2. That no uniform, equal, nondiscriminatory, or any rational basis has been used or followed in fixing said assessments; 3. That the assessments levied upon each . . . of the parcels of land belonging to plaintiffs . . . are arbitrary, confiscatory and not in accordance with benefits received.''

Appellants thus had ample opportunity to specify and set forth, as section 5366 invited, the reasons why the assessments were such as they asserted them to be. Instead of setting forth specific reasons, they stated their grounds of appeal in the broadest kind of generalization. That was the place to assert, if they could, that when Oglesby made the subdivision he

gerrymandered the lines so as to give the Langs a more favorable assessment than their neighbors were getting, or in some other way favored his clients. The plaintiffs not only had the opportunity to make that charge, but if they had made it they had the burden of proving it before the board. That was the forum to which they were directed by the law (see Sts. & Hy. Code, §§ 5341-5369; see, also, *Hannon* v. *Madden,* 214 Cal. 251, 259-60, 265 [5 P.2d 4].)

The amended complaint alleged "That . . . upon the hearing of the protests filed by plaintiffs, testimony oral and documentary was received; that at said hearing . . . Oglesby, testified that during the period of between the time of the execution of the contract . . . and the . . . hearing of the assessment, to-wit, the 30th day of November, 1949, that he had been in the employ for compensation of one of the owners of property within the . . . district, and had engaged in the subdivision of a portion of the lands within the . . . district during said period for compensation."

Under the familiar rule that a pleader states his case in its strongest and most favorable light, it must be presumed that the plaintiffs could not allege either at the hearing of their appeal before the board, or in their pleading in this action, any act or conduct of Oglesby which was at all questionable or which reflected in the least on the fairness and honesty of the assessment. This failure is accentuated by appellants' further allegation "that the subdivision of property from acreage to lots can make a basic difference in the method of assessment of property for benefits . . .; that it is possible to so plan a subdivision that the property so subdivided will receive less assessment than if it had been left and remained as acreage, according to the manner in which said subdivision is planned or designed." The pleader, if he could have done so, should have followed this generalization with a statement of how and why and in what manner the assessment *did in fact* make a difference detrimental to the plaintiffs or other owners; in other words, an allegation showing just how the Lang subdivision was planned so "that the property so subdivided" did actually "receive less assessment than if it had been left and remained as acreage." There is no allegation whatever that Oglesby improperly laid out the subdivision to the advantage of the Langs or the disadvantage of the other owners. Moreover there is no allegation that in his preliminary connection with the spreading of the assessment or at any other time he favored the Langs in any way whatever.

These allegations, concluding with the statement that Oglesby by accepting the Langs' employment while at the same time he was being paid by plaintiffs and others "operates as a constructive fraud upon plaintiffs" and others, and renders the assessment void, is nothing but a bare conclusion of the pleader. "It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which amount to mere conclusions." (*Hannon* v. *Madden, supra,* 214 Cal. 251, 267.)

It is obvious from appellants' pleading and briefs that the real theory of their case is that the fact (by itself) that Oglesby accepted private employment from a landowner within the district, automatically constituted constructive fraud without any illegal act, favoritism, collusion or discrimination on the part of Oglesby, the board, its members, or anybody else.

This is apparent from appellants' reliance on the rule respecting public officers. They cite section 1090 Government Code (formerly Pol. Code, § 920) which reads: "Members of the legislature, state, county, township and city officers shall not be interested in any contract made by them in their official capacity, or by any body or board of which they are members." This is a strict rule with severe penalties consequent on its violation (Gov. Code, § 1097; formerly Pen. Code, § 71). The operation of the rule is well illustrated by such cases as *Stockton Plumbing & Supply Co.* v. *Wheeler,* 68 Cal.App. 592 [229 P. 1020], *Moody* v. *Shuffleton,* 203 Cal. 100 [262 P. 1095], and *County of Shasta* v. *Moody,* 90 Cal.App. 519 [265 P. 1032], all of which are cited by appellants. However, those cases show that that rule is inapplicable (1st) because Oglesby was not a public officer (*Brooks* v. *City of Gilroy,* 219 Cal. 766 [29 P.2d 212]) and (2d) there is nothing alleged which attempts to show any dealings or transaction between him and the sanitary board, or any of its members, other than the proper carrying out of his contract with them; nor is there anything alleged which attempts to show any dealings or transactions between him and Peters, the contractor, other than the proper supervision of Peters' contract with the district.

This brings us to the language of the complaint respecting the vitiating of the assessment. It is there said that the assessment was void and unenforceable "by reason of the interest of . . . Oglesby in the contract and the property within the . . . district . . . while acting as trustee for all of the prop-

erty owners'' therein. There is no allegation that Oglesby owned, or had any interest in, a square foot of land in the district, or that any of the board members did so. Parenthetically it might be noted that even if the board members were property owners in the district they could not have been disqualified from acting in this assessment proceeding (*Federal Construction Co.* v. *Curd,* 179 Cal. 489 [177 P. 469, 2 A.L.R. 1202]). It would seem that when the pleader speaks of Oglesby's interest in property within the district he must necessarily mean the Langs' property.

The pleading, moreover, is vague, if not wholly evasive, when it speaks of Oglesby's interest in "the contract," since there were three different contractual relationships arising out of these proceedings, each distinct from the others, (1st), Oglesby's contract of employment by the district as its engineer for this project; (2d), the contract between the district and Peters for the construction of the sewer system, and (3d), the contract between the property owners within the district and the holders of the assessment warrants or the bonds.

Oglesby's contract of employment was made on July 14, 1948, and is evidenced by the board's resolution appointing him as "engineer of work." No issue is raised by the complaint respecting any improper dealings or transactions of Oglesby, the board, or any of its members, in connection with that contract.

The second contract, that between Peters and the district for the construction of the sewer system, was dated September 28, 1948. Peters was of course required to furnish a faithful performance bond, which ran to the district as obligee (Sts. & Hy. Code, § 5254) and a bond for labor and materials. Both bonds had to be lodged with Oglesby under the provisions of section 5280 requiring the engineer "to make all written contracts, and to receive all bonds authorized by this division." Oglesby had to sign the Peters contract on behalf of the district because of that statutory requirement, but that did not make him a contracting party or a trustee; he was merely a special agent of the district, designated by the act to sign for it, instead of its president or secretary. Obviously, if Peters had failed in the performance of his contract, any action against him would have had to be prosecuted by the district, and in its name (Health & Saf. Code, § 6511) not in Oglesby's name.

Appellants say: "The property owners . . . are the actual parties who are the parties to the contract with the

contractor . . ." This is not correct. Instead of the California cases being, as counsel say, "very clear in the establishment of this principle," they hold just the opposite.

In *Hannon* v. *Madden, supra,* 214 Cal. 251, 258, (a case arising out of the Improvement Act of 1911) the Supreme Court cited approvingly the case of *Heft* v. *Payne,* 97 Cal. 108 [31 P. 844], and said that therein it had been "held that the property owner has nothing to say in determining whether the work shall or shall not be done by the contractor, nor, in the absence of fraud, whether the work has been done according to the contract." In *Heft* v. *Payne,* at page 109, the court in speaking of street assessment cases says: *"The lot-owner in such cases is in no sense a party to the contract,* except as one of the public upon whose property the burden of payment for the improvement is placed. *The city does not act as his agent,* to bind him personally, but in its sovereign capacity, as in matters of taxation . . . His liability arises out of no agreement, express or implied, between him in his individual character and the street contractor. He has nothing to say in determining whether the work shall or shall not be done by the contractor, nor, in the absence of fraud, whether the work has been done according to the contract, but *he can 'question the regularity of the proceeding resulting in the assessment in the same manner and upon the same principles as the validity of a tax may be questioned.'* (*Emery* v. *Bradford,* 29 Cal. [75] 84; *Meuser* v. *Risdon,* 36 Cal. [239] 245; *Dyer* v. *Barstow,* 50 Cal. [652] 654.)" (Italics added.)

In *County of San Diego* v. *Childs,* 217 Cal. 109, 121 [17 P.2d 734], the court says: "The petitioner necessarily concedes that if it prevail the cases of *Chapman* v. *Jocelyn, supra* [182 Cal. 294 (187 P. 962)], *Jeffreys* v. *Point Richmond Canal Co., supra* [202 Cal. 290 (260 P. 548)], and other cases in this state to the same effect, must be overruled. It is insisted that they be not followed for the stated reason that they are ill-considered, are contrary to the doctrine of other cases in this state and contrary to decisions in other jurisdictions. The California cases cited as authority for the statement are not in point. *Three of them correctly hold that the property owner is not a party to the improvement contract* and the others are not inconsistent with the declared doctrine that when the special assessment proceedings are completed a contractual relation arises as between the bondholder and the property owner to such an extent that the substantial rights

of either may not be impaired by subsequent legislation.'' (Italics added.) See, also, *County of Los Angeles* v. *Rockhold,* 3 Cal.2d 192, 201-2 [44 P.2d 340, 100 A.L.R. 149].

 The third contractual relationship came into existence on December 9, 1949, when the assessment was confirmed by the board after a hearing (Childs case, *supra*). Appellants do not question this. However, Oglesby had nothing to do with this. The contractual relationship which then, and only then, arose, was between the property owners and the holders of the district's warrants or bonds and they were not contracts ''voluntarily entered into between the contracting parties'' (*Bradley Co.* v. *Ridgeway,* 14 Cal.App.2d 326, 334 [58 P.2d 194]) but were ''forced upon the parties by the compulsion of law enacted in pursuance of the taxing power of the state'' (*Chapman* v. *Jocelyn,* 182 Cal. 294, 298 [187 P. 962]). This contractual relationship came into existence *after the board had made the engineer's preliminary assessment its own,* following the hearing of the appeals.

After discussing the public officer rule at some length, appellants expressly concede that Oglesby was *not* a public officer. They then proceed to argue that he was, nevertheless, performing the same functions in this proceeding as an office-holding superintendent of streets or city engineer would have had to perform, the argument being, in effect, that as such quasi public officer, he was a trustee for the landowners. The public officer rule has been already discussed, at least far enough, we think, to make it clear that nothing was done by Oglesby in these proceedings, *and nothing was alleged or charged to have been done,* to show a violation of that rule. In short, he had no interest in Peters' contract with the district (other than his interest as ''engineer of work'' to see that Peters performed up to the letter of the contract, plans and specifications) and there were no transactions between Oglesby and the board, or any of its members, other than his strict performance of his own employment contract. This being so, there would seem to be no point at all in laboring either the public officer rule or the quasi public officer rule.

 Appellants repeatedly state the *conclusion* that Oglesby was a trustee. There can be no doubt that the duties of an engineer on such a project are serious and important ones and call for fidelity as well as skill, but the proceedings are strictly statutory, and just what such engineer has to do is fairly well defined by statute and by the decisions. Appellants concede that ''there is no case previously decided

in California applying this principle or this express rule, and therefore no direct citation of authority can be made to the court in support of the principle." They are speaking there of their quasi public officer theory, but the same may be said with respect to their trustee theory. They have cited no case —out of all the reported cases in this state dealing with public improvements—where an engineer has been held to be a trustee for the landowners.

They rely on *City of Oakland* v. *DeGuarda*, 95 Cal.App. 270 [272 P. 779, 273 P. 819], decided by this court. There DeGuarda, the contractor for street work under the 1911 Act, made default, and the city sued him and his bondsman. His contract was with the city, and in the second count the city alleged that it sued as trustee for the landowners. This court held that the city could maintain the action as such trustee. It is obvious that the landowners could not have sued, for, as we have seen, they were not parties to the contract with DeGuarda. Appellants say: "In the case above, the court came to the conclusion that the municipality was acting as trustee for the property owners in the district." That is true, but that does not mean that its street superintendent or city engineer was a trustee. It is clear that whatever was recovered as damages against DeGuarda or his bondsman on the second count would not go into the city's general funds but would be held for the landowners in the assessment district who suffered pecuniary loss by the contractor's default.

There is no need or reason to invoke or have recourse to a trust relation since the engineer's duties and obligations are defined by statute and if he violates them the property owner can "question the regularity of the proceeding resulting in the assessment in the same manner and upon the same principles as the validity of a tax may be questioned." (*Heft* v. *Payne, supra*; see, also, *Irish* v. *Hahn*, 208 Cal. 339, 346 [281 P. 385, 66 A.L.R. 1382].)

The statute itself has provided the forum where such questions are to be raised and presented, and that is an open hearing before the legislative body after proper notice.

Section 5003 Streets and Highways Code (Headed ". . . Remedy of persons aggrieved") reads: "This division shall be liberally construed in order to effectuate its purposes. No error, irregularity, informality, and no neglect or omission of any officer, in any procedure taken under this division, which does not directly affect the jurisdiction of the legislative

body to order the work or improvement, shall avoid or invalidate such proceeding or any assessment for the cost of work done thereunder. The exclusive remedy of any person affected or aggrieved thereby shall be by appeal to the legislative body in accordance with the provisions of this division.''

Section 5367 provides: ''Upon such appeal, the legislative body may remedy and correct any error or informality in the proceedings, and revise and correct any of the acts or determinations of the . . . engineer relative to said work; may confirm, amend, alter, modify or correct the assessment or diagram in such manner as to it shall seem just, and require the work to be completed according to the directions of the legislative body; *and may instruct and direct the street superintendent* [engineer here] *to correct the* warrant, *assessment, or diagram* in any particular.'' (Italics added.)

Section 5368 provides: ''*All the decisions and determinations of the legislative body,* upon notice and hearing as aforesaid, *shall be final and conclusive* upon all persons entitled to appeal to the legislative body, as to all errors, informalities, and irregularities which the legislative body might have avoided, or have remedied during the progress of the proceedings or which it can at that time remedy.'' (Italics added.)

Section 5369 provides: ''No assessment, warrant, or diagram, and no proceedings prior to the assessment, shall be held invalid by any court for any error, informality, or other defect in the same, where the resolution of intention of the legislative body to do the work, has been actually published as provided in this division. When no appeal is taken or when the orders and determinations of the legislative body upon appeal have been complied with, *and the legislative body is satisfied with the correctness of the assessment,* the legislative body shall forthwith confirm the proceedings and the assessment and the street superintendent [engineer here] shall attach thereto a warrant bearing the date of such confirmation.'' (Italics added.) (See *Hannon* v. *Madden, supra,* p. 256, where substantially the same provisions as those now found in §§ 5368-5369 are quoted.)

The case of *Hannon* v. *Madden, supra,* 214 Cal. 251, is controlling. A few excerpts from that opinion will suffice. At page 257 it is said: ''In their protests filed with the board of trustees, the particulars wherein the work did not meet the requirements of the contract are not stated, but the complaint specifies several alleged deficiencies. Where a city council or board of trustees acts dishonestly and fraudulently

to the detriment of the district there is no doubt that its action may be the subject of judicial inquiry. Plaintiffs must fail in the instant case for the reason that the case as presented falls short of establishing fraud on the part of the town's officials who were charged with the duty of making the public improvements.'' The same statement fits this case. At page 258: ''This court and the courts of all other states of the Union, as a matter of public policy and necessity, have zealously guarded the power and jurisdiction of municipal public bodies in the performance of the duty with which they are specially charged, and have limited the jurisdiction of courts to declare their action invalid to extreme cases.'' At pp. 259-260: ''Speaking to the question as to the case presented to the council as distinguished from the case made in the superior court, the decision above cited [*Lambert* v. *Bates,* 137 Cal. 676, 678 (70 P. 777)] holds that *the legislature did not intend that the appeal to the council should be prosecuted in a perfunctory manner or should be a mere formality. It devolves upon protestants to show that sufficient evidence was adduced to support the appeal,* and if the council should overrule the appeal because of its misapplication of the law to the facts, it is incumbent upon the party seeking the review to clearly present to that tribunal the questions of law which he claims to have been misconstrued or erroneously applied, *and show that they have been presented upon the appeal to the council.* It cannot be presumed that the council made an erroneous decision upon the evidence which he did present. Continuing, the court said: 'If he failed or omitted to present to that body the evidence which he afterwards presented to the superior court upon the trial herein, he is in the same position as any litigant who has rested his case upon insufficient evidence. If the statute does not authorize a new trial or a reexamination of such evidence, he must abide the decision of that tribunal.' (See, also, *Cutting* v. *Vaughn,* 182 Cal. 151 [187 P. 19].)'' (Italics added.) And at p. 265: ''As this court said in *Johnson* v. *City of Los Angeles,* 210 Cal. 240 [291 P. 395, 396]: '. . . when the roll. [assessment-roll] is lodged with the clerk for presentation to the council and notice is duly given to the property owners to be affected thereby of the specified date of hearing thereon, the whole assessment roll is in a state of flux and each property owner is charged with knowledge of the number of pieces of property to be assessed, the amount to be raised, the interdependence of the properties upon each other, and the fact that power

to modify necessarily carries with it power to increase as well as decrease any assessment made by the board of public works. . . .' '' When the Supreme Court uses the expression ''state of flux'' it says, in apt and concise language, that the whole matter of the assessment is wide open for all purposes of attack in open hearing. This court had occasion to follow the Hannon case in *Garibaldi* v. *City of Daly City,* 63 Cal.App. 2d 480, 487 [147 P.2d 122], where we quoted therefrom as follows: ''Where an appeal has been taken to the council, its decision may be attacked in a legal proceeding only upon pleading and proof that the board acted fraudulently or that its action is so palpably unreasonable and arbitrary as to raise an inference of plain abuse of discretion as a matter of law. (*Cutting* v. *Vaughn,* 182 Cal. 151 [187 P. 19]; *Spring Street Co.* v. *City of Los Angeles,* 170 Cal. 24 [148 P. 217, L.R.A. 1918E 197]; *Lambert* v. *Bates,* 137 Cal. 676 [70 P. 777]; *Hutchinson* v. *Coughlin,* 42 Cal.App. 664 [184 P. 435].)'' To which we added: ''This ruling is cited with approval in the late case of *City and County of San Francisco* v. *Boyd,* 22 Cal.2d 685, 690 [140 P.2d 666]. The Hannon case was followed to the same point in *Richardson* v. *City of Redondo Beach,* 132 Cal.App. 426, 433 [22 P.2d 1037], and also in support of another rule which is controlling here—the failure to properly raise the issue of fraud.'' *Hannon* v. *Madden* was discussed at some length by respondents in their brief, but appellants in their closing brief have made no attempt to distinguish the two cases. They do not mention it.

The judgment is affirmed.

Nourse, P. J., and Jones, J. pro tem., concurred.