TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 85-1105 |
| of | : | <u>MAY 16, 1986</u> |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| CLAYTON P. ROCHE<br>Deputy Attorney General | : | |

_____

THE HONORABLE CHARLES R. MACK, COUNTY COUNSEL, COUNTY OF YOLO, has requested an opinion on the following questions under the provisions of chapter 816, Statutes of 1985:

A member of a school district governing board, whose term of office commenced in December 1983, is married to a tenured teacher, whose employment with the school district commenced in September 1983. Does section 1090 of the Government Code prohibit the school district board from entering into an annual collective bargaining agreement with a teachers' association which represents the board member's wife either during his current term of office, or during a future term if re-elected? If not, may the board member participate in the making of such contract?

1

CONCLUSIONS

Under the facts stated above, section 1090 of the Government Code literally prohibits a school district board from entering into an annual collective bargaining agreement with the teachers' association during the board member's current term of office. However, such agreement can still be entered into under the "rule of necessity."

If the board member is re-elected, section 1090 of the Government Code would not prohibit the collective bar- gaining agreement by virtue of the provisions of section 1091.5, subdivision(a)(6) of the Government Code.

During his current term of office, the board member should abstain from participation in the making of the annual collective bargaining agreement. He may, however, participate in its making during a future term of office if he is re-elected.

ANALYSIS

This request for our opinion arises from the enactment of chapter 816, Statutes of 1985. That statute made the general contractual conflict of interest provisions of section 1090 et seq. of the Government Code applicable to school board members. Prior thereto, they were governed by special provisions contained in the Education Code.[1] Accordingly, section 33233 of the Education Code was repealed and re-enacted to read:

"The prohibitions contained in Article 4 (commencing with Section 1090) and Article 4.7 (commencing with Section 1125) of Division 4 of

---

[1] School board members were, of course, and still are also subject to the conflict of interest provisions of the Political Reform Act of 1974, Government Code section 87100 et seq. That law, however, does not preclude the enactment of or application of nonconflicting additional conflict of interest provisions. (Gov. Code, § 81013.)

Additionally, since 1955 (Stats. 1955, ch. 1125, 4), school board members have been subject to the sanctions provided for under the general contractual conflict of interest provisions. Government Code, section 1097 provided, and provides:

"Every officer or person prohibited by the laws of this state from making or being interested in contracts, or from becoming a vendor or purchaser at sales, or from purchasing scrip, or other evidences of indebtedness, *including any member of the governing board of a school district*, who willfully violates any of the provisions of such laws, is punishable by a fine of not more than one thousand dollars ($1,000), or by imprisonment in the state prison, and is forever disqualified from holding any office in this state." (Emphasis added.)

2

Title 1 of the Government Code are applicable to members of governing boards of school districts."

Education Code sections 35234 through 35238, which governed contractual conflicts of interest, were repealed.[2]

Both the California Supreme Court and this office have had the occasion recently to set forth the general provisions and principles governing the operation of section 1090 et seq. of the Government Code. (See *Thomson* v. *Call* (1985) 38 Cal.3d 633; 67 Ops.Cal.Atty.Gen. 369, 375-378 (1984); 66 Ops.Cal.Atty.Gen. 156 (1983).) Reference is made to those opinions for a discussion of those principles. Suffice it to say at this point that section 1090 et seq. of the Government Code prohibits any public officer or employee from having any financial interest, direct *or indirect*, in any contract made by him in his official capacity, or by any board or commission of which he is a member. Excepted from the strictures of this rule are certain "remote interests" set forth in section 1091 of the Government Code and certain "non-interests" set forth in 1091.5 of that code. Where the section 1090 prohibition is applicable, the prohibition acts as an absolute bar to a board or commission entering into the prohibited contract. This is true even if the interested board member completely abstains from any participation in the matter. The one exception to this is if, under the particular circumstances of the case, the "rule of necessity" can be applied. Contracts made in violation of section 1090 are generally void.[3]

---

[2] Similar changes were made to the parallel provisions applicable to community college district board members contained in the section 72000 series of the Education Code.

Section 1125 et seq. of the Government Code governs "incompatible activities" of officers and employers of local agencies.

[3] *Thomson* v. *Call*, *supra*, 38 Cal.3d 633 is an excellent example of the manner in which the courts strictly enforce section 1090. In that case Call, a city councilman, was one of the parties to a multiparty transaction with the city whereby a developer agreed to acquire property and donate it to the city for park purposes in exchange for favorable rezoning and the issuance of use and building permits for its development project. The developer acquired Call's property for $258,000.00 for conveyance to the city, which the court characterized as Call having actually sold such property to the city, using the developer "as a conduit." (*Id.*, at p. 646.)

The court voided the transaction; permitted the city to retain title to the property; and also required Call to *forfeit* the $258,000.00 purchase price to the city. The court noted, after having reviewed the authorities:

" . . . As we have seen, *civil liability* under section 1090 is not affected by the presence or absence of fraud, by the official's good faith or disclosure of interest, or his nonparticipation in voting; nor should these considerations determine the civil remedy. (*Id.* at p. 652.)

3

The repealed provisions of the Education Code were to some degree less stringent. Thus, under prior sections 35234 and 35235 of the Education Code, a school board could enter into a contract despite the interest of one of its members if the contract was "just and reasonable", full disclosure had been made publicly by the board member in advance, the contract was not with the board member himself, and his vote was not necessary.[4]

In relatively recent years both the courts and this office have examined in detail the application of prior sections 35234 and 35235 (then §§ 1174 & 1174.5) of the

---

[4] Section 35233 provided: "No member of the governing board of any school district shall be interested in any contract made by the board of which he is a member."

Section 35234 provided:

"Except as provided in Section 35235, no contract or other transaction entered into by the governing board of any school district is either void or voidable under the provisions of Section 35233, nor shall any member of such board be disqualified or deemed guilty of misconduct in office under said provisions, if the circumstances specified in the following subdivisions exist:

"(a) The fact of such interest is disclosed or known to the governing board and noted in the minutes, and the governing board thereafter authorizes, approves, or ratifies the contract or transaction in good faith by a vote sufficient for the purpose without counting the vote or votes of such interested member or members, and

"(b) The contract or transaction is just and reasonable as to the school district at the time it is authorized or approved."

Section 35235 provided:

"The provisions of Section 35234 shall not be applicable if the circumstances specified in any of the following subdivisions exist:

"(a) The contract or transaction is between the school district and a member of the governing board of that district.

"(b) The contract or transaction is between the school district and a partnership or unincorporated association of which any member of the governing board of that district is a partner or in which he is the owner or holder, directly or indirectly, of a proprietorship interest.

"(c) The contract or transaction is between the school district and a corporation in which any member of the governing board of that district is the owner or holder, directly or indirectly, of five percent (5%) or more of the outstanding common stock.

"(d) A board member is interested in a contract or transaction within the meaning of Section 35233 and, without first disclosing such interest to the governing board at a public meeting of the board, influences or attempts to influence another member or members of the board to enter into the contract or transaction."

4

Education Code with reference to possible conflicts of interest where a school board member's spouse was a certificated employee of the school district.

Thus, in *Coulter* v. *Board of Education* (1974) 40 Cal.App.3d 445, the court held that then sections 1174 and 1174.5 permitted a school board to unanimously vote to increase the salary and benefits of all school district employees despite the fact that one board member's spouse was a tenured teacher. The court concluded that all conditions requisite to a finding that the transaction was "just and reasonable" under the Education Code had been met. The court also held that the conflict of interest provisions of the Education Code could constitutionally apply and prevail over the more general provisions of section 1090 et seq. of the Government Code.

Thereafter, in 61 Ops.Cal.Atty.Gen. 412 (1978) this office was asked (1) whether a school district board member could participate in contract negotiations with an employees' bargaining unit to which his spouse belonged; (2) whether the answer would be different if the spouses had agreed to transform the contract benefits into separate property; and (3) whether the answer would be different if the spouse were a certificated as opposed to a noncertificated employee.

Accordingly, in 61 Ops.Cal.Atty.Gen. 412 (1978) we were faced with the question as to the effect of *Coulter* v. *Board of Education*, *supra*, 40 Cal.App.3d 445 on prior opinions of our office. We summarized the *pre-Coulter* law as follows:

"Prior to 1974 this office has held that contracts or other transactions between a school district and a board member's spouse would fall within the proscription of the Education Code conflict of interest provisions. This was predicated upon the community property interest of the board member in the spouse's contracts, and the proscription found now in section 35235, subdivision (a), previously sections 1011.2 and 1175, and subdivision (a) thereof. Thus, in 26 Ops.Cal.Atty.Gen. 281, 282 (1955), we held that the following contracts or transactions would be prohibited and void by virtue of conflicts of interests of the board member:

"'. . . . . . . . . . . . . . . . . . . . . .

"'(2) Where the wife of a board member would serve as secretary of the district, handling records, correspondence, etc.'

"'(3) Where the wife of a board member would transport pupils to the district school, including both her own children and those of certain other board members.'

5

"Our holding in 26 Ops.Cal.Atty.Gen. 281, *supra*, on these contracts applied even if the board member and his wife agreed that their earnings should be her separate property. We so held on the grounds that, since the wife's separate property was still liable for necessities provided both spouses, the husband retained a prohibited interest in his wife's contracts. (See *Nielsen* v. *Richards* (1925) 75 Cal.App.680; *Reece* v. *Alcoholic Bev. Etc. Appeals Bd.* (1976) 64 Cal.App.3d 675, 683.) In sum, we held, at page 285:

"'We accordingly conclude that a contract between the district and the wife of a board member of that district is a contract with the community, and, as a matter of law, with the board member itself.'

"See also 3 Ops.Cal.Atty.Gen. 333 (1944), holding that it would require an amendment to section 1011 of the Education Code (now section 35233, *supra*) to permit a school board member to serve on a district board in the same school district in which his wife is a tenured teacher; letter opinion I.L. 65-146, motion of school district board to raise salaries invalid for the reason, inter alia, that spouse of a trustee was a tenured teacher." (61 Ops.Cal.Atty.Gen. at p. 417.)

We concluded in 61 Ops.Cal.Atty.Gen. 412 (1978) that *Coulter* v. *Board of Education*, *supra*, 40 Cal.App.3d 445 did in fact change the result of our *pre-Coulter* opinions decided under the Education Code. Accordingly, we concluded that no conflict of interest would occur under sections 35233 through 35235 of the Education Code and therefore (1) it made no difference whether there was a spousal agreement or not to transmute the spouse's earnings into separate property and (2) it made no difference whether the spouse was a certificated or non-certificated employee. We stated in part:

"In short, the court of appeal [in Coulter] held that a school board member may, without violating former section 1174 of the Education Code (now section 35233, *supra*) vote upon a labor agreement which will beneficially effect his or her spouse who is employed by the school district so long as the conditions set forth in former section 1174.5 of the Education Code (now section 35234, *supra*) are met by the board member. The court of appeal so held being fully aware of the provisions of then section 1175 of that Code (now section 35233 [35235], *supra*) and the trial court's holding with respect thereto. It also was certainly fully cognizant of California's community property laws which would, unless agreed to otherwise, give the board member a clear financial interest in the spouse's earnings (Civ. Code § 5100 *et seq*.). No such agreement was alluded to in

6

85-1105

the case. Thus, it is the opinion of this office that *Coulter* v. *Board of Education*, *supra*, 40 Cal.App.3d 445 is controlling on the facts presented in the instant request for our opinion. We perceive no distinguishing facts from those in *Coulter*. Furthermore, *Coulter* considered and applied all the pertinent provisions of the Education Code.

"Insofar as the court of appeal in *Coulter* did not discuss nor attempt to distinguish *Neilsen* v. *Richards*, *supra*, 75 Cal.App. 680, we note that that case involved a conflict of interest question with respect to a county superintendent of schools, not a school board member. Consequently, the case was decided under the predecessor provisions to section 1090 of the Government Code, and common law principles, and not the predecessors to the present Education Code provisions that are controlling herein. Therefore, the *Neilsen* case cannot be considered to be in direct conflict with the *Coulter* case." (61 Ops.Cal.Atty.Gen. at p. 422.)

We further pointed out that since *Coulter* had considered all pertinent provisions of the Education Code, it in effect *sub silentio* had concluded that the community property interest of the board member in his spouse's contract was *not* a contract with himself within the meaning of the section 1175, subdivision(a) (later Ed. Code, § 35235, subd. (a).)

The significant point for our present consideration is that *Coulter* v. *Board of Education*, *supra*, 40 Cal.App.3d 445 did *not* in any way overrule the holding in *Neilsen* v. *Richards* (1925) 75 Cal.App. 680.

Thus, school boards have been "transferred" for contractual conflicts of interest purposes from the repealed Education Code provisions to sections 1090 et seq. of the Government Code with no greater or lesser rights than other officers and employees with respect to their community property interests in their spouses' contracts and other financial affairs. This being so, we believe our opinion in 65 Ops.Cal.Atty.Gen. 305 (1982) is now determinative and controls most of the questions presented in this request for our opinion.

In that opinion we were presented with the situation where a county superintendent of schools was elected to a four-year term commencing in January 1979. As such, he was the employer and appointing power for all classified civil service employees in his office. His office had entered into a memorandum of understanding (MOU) relating to wages, hours and working conditions with his classified employees which was to remain in force until June 30, 1983. The MOU, however was subject to modification while in force.

7

In August 1981, during his term, he married one of the classified employees in his office. The question presented was:

". . . whether section 1090 of the Government Code prohibits the superintendent from agreeing to modify the current MOU, or prohibits him from entering into a new one should he be reelected, while his wife continued in her civil service employment." (65 Ops.Cal.Atty.Gen. at p. 306.)

We concluded:

". . . that section 1090 prohibits neither of these official actions by the superintendent despite his wife's continued employment. As to the current MOU, we conclude that the 'rule of necessity' would apply. As to a new MOU should he be reelected, we conclude that the 'non-interest' exception to section 1090 of the Government Code contained in section 1091.5, subdivision(a)(6) would apply at such time." (65 Ops.Cal.Atty.Gen. at p. 307.)

In reaching our conclusion we recognized that MOU's or modifications thereof were contracts within the prohibition of section 1090 of the Government Code.[5] In reaching our conclusion we also recognized that the superintendent, either in making or participating in the making of an MOU or modifications thereto, would fall within the prohibition of section 1090. We did so by concluding as we had in our prior opinions that the superintendent would have an inescapable community property interest in his wife's earnings and other economic benefits of the MOU, and accordingly would be "financially interested" in the MOU or its modification.

Then noting that none of the "remote interests" set forth in section 1091 of the Government Code were germane, we went on to examine the "non-interests" set forth

_____

[5] Section 1090 provides:

"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity.

"As used in this article, 'district' means any agency of the state formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries."

8

in section 1091.5 of the Government Code, and found one to be relevant. That was subdivision(a)(6) thereof. It provides:

"(a) An officer or employee shall not be deemed to be interested in a contract if his or her interest is any of the following:

". . . . . . . . . . . . . . . . . . . . .
"(6) That of a spouse of an officer or employee of a public agency in his or her spouse's employment or officeholding if his or her spouse's employment or officeholding has existed for at least one year prior to his or her election or appointment."

We accordingly found this "non-interest" to be facially inapplicable to the superintendent during his current term, since the marriage occurred during his term. We, however, concluded as to the new term that "it would clearly apply." (65 Ops.Cal.Atty.Gen. at p. 311.) Thus, during a future term there was no prohibition as to his entering in an MOU or modification thereof under section 1090 of the Government Code.

As to his current term, we applied the "rule of necessity" to permit the superintendent to enter into modification of the MOU. After reviewing the history of the rule at some length, we stated:

"With respect to contractual conflicts of interest the 'rule of necessity' may be said to have two facets. The first, which is not involved herein, arises to permit a governmental agency to acquire an essential supply or service despite a conflict of interest. The contracting officer, or a public board upon which he serves, would be the sole source of supply of such essential supply or service, and also would be the only official or board permitted by law to execute the contract. Public policy would authorize the contract despite this conflict of interest. (See 59 Ops.Cal.Atty.Gen. 604, 619 n.18, and opinions cited therein.) The second facet of the doctrine, exemplified in *Caminetti* v. *Pac. Mutual Ins. Co.*, *supra*, [22 Cal.2d 344 (1943)] arises in nonprocurement situations and permits a public officer to carry out the essential duties of his office despite a conflict of interest where he is the only one who may legally act. It ensures that essential governmental functions are performed even where a conflict of interest exists.

"Reasoning from the *Caminetti* case, and the principles stated therein, we believe the superintendent is qualified to act with respect to his

9

employees in cases where only he can legally act, such as with respect to the MOU.  Otherwise, no action could or would be taken.  All of the employees of his office would then be denied the benefits of collective bargaining under the Rodda Act or the benefits which might be derived from the wage adjustments under the current memorandum of understanding.  The need for the application of the 'rule of necessity' in such cases is patent."  (65 Ops.Cal.Atty.Gen. at p. 310, fns. omitted.)[6]

Nor did we believe that either the superintendent or his wife should be required to resign to avoid the conflict of interest and the application of the rule of necessity.  With respect to the superintendent, we stated:

"It might be urged, however, that the 'rule of necessity' should not be applied to our facts herein because the superintendent caused his own 'conflict' by marrying an employee in his office.  Our research has disclosed no such limitation upon the rule.  Furthermore, the application of such a limitation would mean that the superintendent should resign to both avoid the conflict and assure that essential governmental functions will continue to be performed.

"We believe, however, that at least under the facts herein, the superintendent need not resign.  First of all, as an elective official, he has been placed in office by the people.  The electorate have a right to expect that he will serve unless he voluntarily resigns from office or is removed from office under clearly established procedures for removal (e.g., recall by the electorate, see Elec. Code. § 27000 et seq., or removal for willful or corrupt misconduct in office, Gov. Code, § 3060 et seq.).  Secondly, the fact of marriage to an employee in his office constitutes neither a disqualification for running for such office nor from continuing in office.

---

[6] We would note that the "rule of necessity" is to reflect actual necessity after all possible alternatives have been explored.  Thus, in prior opinions of this office we have concluded in procurement situations that

". . . This rule would apply only in cases of real emergency and necessity.  An event that can be reasonably anticipated, such as the repeated failure of a [car] battery or the necessity for periodic service, would not be considered an emergency."  (4 Ops.Cal.Atty.Gen. 264 (1944); see also 57 Ops.Cal.Atty.Gen. 458, 463-465 (1974).)

Likewise, if a public entity requires real property for its use which is owned by an officer who would fall within the proscription of section 1090 of the Government Code (see, e.g. *Thomson* v. *Call*, *supra*, 38 Cal.3d 633), the entity need not rely upon the "rule of necessity."  It need only exercise its power of eminent domain.  (See, e.g. 26 Ops.Cal.Atty.Gen. 5 (1955).)

10

(See Ed. Code, § 1207.) And finally, since the United States Supreme Court has recognized that the 'freedom to marry has long been recognized as one of the vital personal rights to an orderly pursuit of happiness by free men' and that '[m]arriage is one of the "basic civil rights of men." fundamental to our very existence and survival' (*Loving* v. *Virginia* (1967) 388 U.S. 1, 12), we should avoid an interpretation of the law which could be construed as an impediment to, and a punitive measure taken because of, marriage. (See also, *Zablocke* v. *Redhail* (1978) 434 U.S. 374 firmly establishing a constitutional right to marriage.) The 'rule of necessity' permits us to avoid such a construction." (65 Ops.Cal.Atty.Gen. at p. 311, fns. omitted.)

And as to his wife, we stated in footnote 10:

"One might also urge that, alternatively, his wife should resign to avoid any conflict. We reject such an alternative for several reasons. First of all, any conflict which might arise under section 1090 of the Government Code would be with respect to the superintendent's official action, not his wife's. Accordingly, she should not be required to resign when she herself would be doing nothing legally wrong where only *he* has acted. Secondly, she is a permanent civil service employee. As such she has the right to be terminated only in accordance with the 'Merit System Rules for Classified Employees of the Santa Cruz County Office of Education,' section 6.600 et seq."

It would seem that our opinion in 65 Ops.Cal.Atty.Gen. 305 (1982) is virtually on "all-fours" with the situation presented in this instant opinion request.

We are also presented herein with a collective bargaining agreement to be entered into pursuant to the Rodda Act (Gov. Code, § 3540 et seq.) in which the husband-contractor has a financial interest by virtue of his wife's employment with the contracting public entity. We are also presented with the situation where the wife is a permanent employee of the public entity by virtue of her tenured status with the school district. As such, she cannot be terminated by the school board except for cause. (See Ed. Code, §§ 44884, 44932.) Accordingly, her position is analogous to the permanent civil service employee-wife we dealt with in 65 Op.Cal.Atty.Gen. 305 (1982).[7]

---

[7] Accordingly, we do not attempt to meet herein any issue which might be raised if the wife were a non-tenured and hence not a "permanent" school district employee whose "contract" is renewed from year to year by operation of law. If such were the case, we would have to scrutinize the underlying contract of employment to determine the ability or not of the district

Thus, there appears to be only two real factual differences between the instant opinion and our 1982 opinion. The first is that in our 1982 opinion we were dealing with a single officer instead of a multi-member board. The second is that in the present situation the board member was married at the time he was elected (but still not long enough to apply the noninterest provision of section 1091.5, subdivision(a)(6) to his current term).

In a recent comprehensive opinion on conflicts of interest, this office anticipated the possibility of applying the "rule of necessity" to a multimember board under section 1090 where a single member had a financial interest in a contract. We stated in 67 Ops.Cal.Atty.Gen. 369, 378 (1984) with respect to a possible conflict of interest of a single member, referring back to our 1982 county superintendent of schools opinion:

"If an analysis of a particular contractual situation discloses that the supervisor-director has a 'financial interest' in a contract proposed to be entered into by the agency which neither qualifies as a 'remote interest' nor a 'noninterest' such fact does not mean that the agency board is always powerless to enter into contracts which are necessary or proper to carry out its statutory duties and powers. Engrafted upon the section 1090 proscription is the 'doctrine of necessity.' This doctrine was explained in detail and applied by this office in a relatively recent opinion, 65 Ops.Cal.Atty.Gen. 305 (1982). Reference is made to that opinion for such detailed analysis. The doctrine permits governmental officers or agencies to carry out essential duties despite conflicts of interest where only they may act.

"A perusal of 65 Ops.Cal.Atty.Gen. 305, *supra*, will disclose two bases for the doctrine. One is that it has its origins in the common law. The other is one of the presumed intent of the Legislature. This latter basis appears particularly germane herein with respect to agency contracts. It is to be recalled that in 1979, when the Legislature amended section 7 of the Agency Act to require service of two local representatives on the agency board, it was fully aware that representatives might be chosen from districts where land ownership was required for election or appointment to office. Thus, the Legislature was fully aware that the agency, in carrying out its essential functions, would encounter situations where conflicts of interest might arise as to the two local representatives. The Legislature could not

---

board to exercise an option not to rehire her. Such an option might obviate the need to apply the "rule of necessity" to a prospective annual collective bargaining agreement.

12

have intended that the agency should be powerless to act because of such conflicts.

"Accordingly, the doctrine would permit the agency board to enter into contracts to carry out its essential functions despite the conflict of interest of one or more board members.  The affected director(s) should, however, *abstain either under common law concepts* or under the appropriate PRA analysis as determined by the FPPC."  (67 Ops.Cal.Atty.Gen. at p. 378, emphasis added, fns. omitted.)[8]

Thus, we not only recognized the potential applicability of the "rule of necessity" to multimember boards under section 1090 of the Government Code, but we also recognized that, since the rule is not set forth in the code, nothing in the code itself would *require* abstention. We stated, however, that abstention should be the course to be followed.  This approach is logical and we reaffirm it herein.  To conclude otherwise, and permit participation of the financially interested board member, would stretch the "rule of necessity" well beyond the bounds of necessity.[9]

With respect to the second factual distinction between our present case and that considered in our 1982 opinion, that is, that the marriage in the instant opinion preceded the board member's election to office, we believe that the reasoning of our 1982 opinion, set forth at length above as to why neither the superintendent of schools nor his permanent civil service wife should be required to resign, is equally applicable to the board member herein and his tenured-teacher wife.

Accordingly, based upon the foregoing analysis we reach the following conclusions as to the school board and the school board member involved herein:

---

[8] We are not asked about nor do we discuss herein the Political Reform Act (PRA) aspects of this matter.  (See, 67 Ops.Cal.Atty.Gen. 369, 374 (1984):  such matters should be addressed to the Fair Political Practices Commission.)

[9] In so concluding, we note possible language or implications in some older decisions involving public improvement assessment proceedings indicating that the interested official may still act.  (See, e.g., *Federal Construction Co*. v. *Curd* (1918) 179 Cal. 489; *Jeffery* v. *City of Salinas* (1965) 232 Cal.App.3d 29, 40, fn.5; *Raisch* v. *Sanitary Dist. No. 1* (1952) 108 Cal.App.2d 878, 884.)

We would not counsel such an approach based upon these cases, and believe they should be narrowly construed and restricted to their facts.  (Compare 61 Ops.Cal.Atty.Gen. 243, 253-255 (1978).)

13

1.  Section 1090 of the Government Code would literally prohibit an annual collective bargaining agreement between the school board and the teachers' association during the board member's current term. However, such an agreement could still be entered into under the "rule of necessity."

Further, if the board member is re-elected, section 1090 of the Government Code would not prohibit the employees' annual agreement by virtue of the "non-interest" provisions of section 1091, subdivision(a)(6) of the Government Code.

2.  The collective bargaining agreement could be rendered void if entered into during the board member's current term with his participation. Contracts entered into in violation of section 1090 are void. (See *Thomson* v. *Call, supra*, 38 Cal.3d 633, 646, fn. 15.) Failure to properly adhere to the "rule of necessity" by abstention could constitute a violation of section 1090.

As to a future term, section 1091.5 subdivision (a)(6) would completely remove any section 1090 proscription. Accordingly, the collective bargaining agreement would be valid with or without the interested board member's participation.

3.  Since a violation of section 1090 of the Government Code subjects an official to possible criminal sanctions and disqualification from office under section 1097 of the code, those sanctions could be applied if the board were to enter into a collective bargaining agreement *with* the interested members' participation. That participation would go beyond the bounds of the "rule of necessity."

As to a future term of office, no proscription would be applicable under section 1090 of the Government Code. Accordingly, no sanctions would be applicable.

4.  Section 1090 of the Government Code would not prohibit the school board member from participating in negotiations with the teachers' association during a future term of office. He should, however, abstain from any and all participation during his current term of office under general common law principles.

*****

14

85-1105